STATE OF NORTH CAROLINA v. JATHIYAH A. AL-BAYYINAH,
AKA TERRY DENNIS MOORE

No. 90A01

(Filed 16 August 2002)

**Evidence— prior crimes or bad acts—dissimilar robberies— questionable pretrial identification procedure**

The trial court erred in an attempted robbery with a dangerous weapon and felony murder case by allowing under N.C.G.S. § 8C-1, Rule 404(b) testimony of two prior robberies allegedly committed by defendant, and defendant is entitled to a new trial because: (1) the testimony described robberies that were factually dissimilar to the robbery and murder charged in the instant case, and the State failed to show sufficient similari-

STATE v. AL-BAYYINAH

[356 N.C. 150 (2002)]

ties existed beyond those characteristics inherent to most armed robberies; and (2) the testimony rested upon a pretrial identification procedure of questionable validity including a single-photo identification procedure where police told the witness that the man pictured was in custody and made statements intimating that the authorities believed the man had committed not only the crime for which he was detained, but also the prior robberies.

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Gray, J., on 14 December 1999 in Superior Court, Davie County, upon a jury verdict finding defendant guilty of first-degree murder. On 20 June 2001, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of an additional judgment. Heard in the Supreme Court 11 March 2002.

*Roy Cooper, Attorney General, by Joan M. Cunningham and Amy C. Kunstling, Assistant Attorneys General, for the State.*

*Staples Hughes, Appellate Defender, by Janet Moore, Assistant Appellate Defender, for defendant-appellant.*

MARTIN, Justice.

On 7 December 1999, a jury convicted defendant Jathiyah A. Al-Bayyinah of attempted robbery with a dangerous weapon and felony murder. On 13 December 1999, the jury recommended a sentence of death, and the trial court entered judgment in accordance with that recommendation the following day.

The facts pertinent to our disposition of this case are summarized as follows. Simon Wilford Brown (Brown) owned a wholesale grocery store at 473 Depot Street in Mocksville, North Carolina, which he operated with the help of his family, including his son, Charles Brown (Charles). On 6 March 1998, Charles arrived at the store at approximately 7:30 a.m. He entered through the front door and locked it behind him. About twenty minutes later, he heard his father enter the store. A short time later, Charles rushed to the front of the store when he heard his father call out for him. Motioning toward the front door, Brown said a man had stabbed him and had run out the door and to the right.

While Charles gave chase, his father dialed 911 and reported that he had been stabbed in the course of a robbery. Brown identified the

robber as an African-American male wearing dark clothing and repeated several times that he thought he recognized the robber as a man who had tried to cash a paycheck in his store the previous day. When Charles returned to the store, he noticed that his father's wallet was on the floor and that money was scattered about. A later inventory of the store and Brown's wallet revealed that no substantial amount of money or merchandise was missing. Brown died nine days later, on 15 March 1998. Forensic pathologist Patrick Eugene Lantz, who performed the autopsy, testified that the cause of death was complications from a stab wound to the chest.

Clarence Melvin Parks testified that he saw an African-American male dressed in a dark hooded windbreaker and jeans near Brown's store shortly after 7:30 a.m. on the morning of 6 March 1998. Jean Sheets, who was in her car on Depot Street that morning, testified that she saw an African-American male dressed in dark clothing near Brown's store and that a short time later, she saw the man running down the street. Officer Joey Reynolds of the Mocksville Police Department also spotted defendant near the store on the day of the crime. Defendant was wearing jeans, a dark blue sweatshirt, black boots, and a black coat. Reynolds and two other officers pursued defendant into a wooded area and took him into custody.

At trial, the state introduced the testimony of Alexander Splitt, a Mocksville grocery store owner who had been robbed on two separate occasions approximately one month before Brown was stabbed. Splitt testified that the first robbery occurred on 20 January 1998 at about 6:40 a.m., when he was alone in his store. A man wearing a dark ski mask and dark clothing ran into the store brandishing a gun and came behind the store counter with Splitt. Splitt described the robber's voice and the words he spoke, relating that the robber demanded money and admonished Splitt not to look at him. Splitt testified that he could tell the man was African-American because the robber came very close to him, and Splitt could clearly see, under the lights of the store, the robber's exposed eyes, nose, lips, and hands. Splitt estimated the robber's height at around five feet seven or five feet eight inches. Splitt testified that the robber was moving very quickly and that, before he left the store, he forced Splitt to get down onto the floor behind the counter. Splitt noted that it was very dark outside and "drizzling," but when he got up and looked out of the front window, he testified that he could see the robber running across the street, away from the store.

**STATE v. AL-BAYYINAH**

[356 N.C. 150 (2002)]

The second robbery occurred on 22 January 1998 around 7:40 p.m. Splitt again described the weather as dark and drizzling. Splitt testified that an African-American man wearing dark clothing, including a dark blue hood, entered the store and asked Splitt for a pack of cigarettes. Splitt stated that as he turned his back on the man to retrieve the cigarettes, he thought he recognized the voice as the robber from two days before. When Splitt turned back around, the man was splashing gasoline onto the grocery counter from a two-liter soda bottle. The gasoline soaked Splitt's clothing and splashed onto the cash register. Splitt testified that the robber repeated his demand for money and pulled out a cigarette lighter, threatening to ignite the gasoline. Splitt recounted that he recognized not only the robber's voice, but also his eyes and face, visible under the hood. After Splitt gave him the money, he watched as the robber quickly exited and ran across the street away from the store in the same direction as the first robber. The day after this encounter, Splitt reported both of the robberies to the Davie County Sheriff's Department.

On 3 February 1998, Splitt reviewed the Department's mug shot book but was unable to identify the robber out of several thousand photos. Defendant's picture was not in the mug shot book at that time. A few hours after Brown was stabbed on 6 March 1998, a detective contacted Splitt and told him that he had a suspect in custody for a robbery that had occurred that morning. Splitt was invited to come to the magistrate's office to look at a photograph of defendant, the suspect. Splitt was shown a single photograph of defendant, and Splitt identified defendant as the man he believed had robbed his store on two previous occasions.

In response to defendant's motion to suppress Splitt's testimony, the state countered that Splitt's descriptions of the two prior armed robberies were admissible under Rule 404(b) of the North Carolina Rules of Evidence. The trial court denied defendant's motion to suppress. Defendant argues the trial court committed reversible error because Splitt's testimony was irrelevant and was used solely for the unfairly prejudicial purpose of proving bad character.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." N.C.G.S. § 8C-1, Rule 404(b) (2001). In

STATE v. AL-BAYYINAH

[356 N.C. 150 (2002)]

*State v. Coffey,* 326 N.C. 268, 389 S.E.2d 48 (1990), this Court held that Rule 404(b) "state[s] a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts *by a defendant,* subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Id.* at 278-79, 389 S.E.2d at 54 (emphasis altered).

Rule 404(b) evidence, however, should be carefully scrutinized in order to adequately safeguard against the improper introduction of character evidence against the accused. *See* N.C.G.S. § 8C-1, Rule 404(a) ("Evidence of a person's character . . . is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion."); *see also Michelson v. United States,* 335 U.S. 469, 475-76, 93 L. Ed. 168, 174 (1948) ("The inquiry [into character] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the [jurors] and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.") (footnote omitted); *State v. Jones,* 322 N.C. 585, 588, 369 S.E.2d 822, 824 (1988) ("[T]he admissibility of evidence of a prior crime must be closely scrutinized since this type of evidence may put before the jury crimes or bad acts allegedly committed by the defendant for which he has neither been indicted nor convicted."). As we stated in *State v. Johnson,* 317 N.C. 417, 347 S.E.2d 7 (1986), "[t]he dangerous tendency of [Rule 404(b)] evidence to mislead and raise a legally spurious presumption of guilt requires that its admissibility should be subjected to strict scrutiny by the courts." *Id.* at 430, 347 S.E.2d at 15; *see also* 1A John H. Wigmore, *Evidence* § 58.2 (Peter Tillers ed. 1983) ("[Character evidence] is objectionable not because it has no appreciable probative value but because it has too much. The natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited and either to allow it to bear too strongly on the present charge or to take the proof of it as justifying a condemnation, irrespective of the accused's guilt of the present charge.").

To effectuate these important evidentiary safeguards, the rule of inclusion described in *Coffey* is constrained by the requirements of similarity and temporal proximity. *State v. Lloyd,* 354 N.C. 76, 88, 552

S.E.2d 596, 608 (2001); *State v. Lynch*, 334 N.C. 402, 412, 432 S.E.2d 349, 354 (1993); *State v. Price*, 326 N.C. 56, 69, 388 S.E.2d 84, 91, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990). Evidence of a prior bad act generally is admissible under Rule 404(b) if it constitutes "substantial evidence tending to support a reasonable finding by the jury that the defendant committed the *similar* act." *State v. Stager*, 329 N.C. 278, 303, 406 S.E.2d 876, 890 (1991) (citing *Huddleston v. United States*, 485 U.S. 681, 99 L. Ed. 2d 771 (1988)) (quotation marks omitted) (emphasis added).

Assuming, without deciding, that defendant committed the Splitt robberies, substantial evidence of similarity among the prior bad acts and the crimes charged is nonetheless lacking. The details of the Splitt robberies were generic to the act of robbery: The robber wore dark, nondescript clothing that obscured his face; carried a weapon; demanded money; and fled upon receiving it. Both times Splitt's store was robbed, the perpetrator took money, while in the instant crime, the robber took nothing of substantial value. Splitt was robbed first at gunpoint, then under threat of immolation, while the victim in the instant crime was surprised from behind, hit on the back of the head, and stabbed.

Even when compared with each other, the two Splitt robberies were so dissimilar that Splitt himself admitted it was only when he heard the perpetrator's voice during the second robbery that he believed the same person committed both robberies. In the first Splitt robbery, the robber rushed into the store and immediately demanded money, while in the second, the robber pretended to be a legitimate customer before demanding money. In the first robbery, the man used a gun; in the second, gasoline and a lighter. The first robbery took place in the early morning, and the second occurred at night. The first robber was masked, while the second was not.

In essence, Splitt's testimony described robberies that were factually dissimilar to the robbery and murder charged in the instant case. The state offered evidence showing that Splitt was robbed and that defendant may have committed the offenses. The state failed to show, however, that sufficient similarities existed between the Splitt robberies and the present robbery and murder beyond those characteristics inherent to most armed robberies, i.e., use of a weapon, a demand for money, immediate flight. *See Lynch*, 334 N.C. at 412, 432 S.E.2d at 354 (holding that, because the details of the prior bad acts and the crimes charged were dissimilar, they did not bear "any logical

relationship" to each other, and hence should not have been admitted under Rule 404(b)).

Moreover, in addition to the factual dissimilarity between the Splitt robberies and the instant crime, Splitt's testimony also rested upon a pretrial identification procedure of questionable validity. The trial court determined that the single-photograph identification procedure used in the present case was not impermissibly suggestive under the totality of the circumstances. The evidence of record, however, indicates that on the afternoon of the Brown robbery, the detective telephoned Splitt and told him that there had been a robbery in Mocksville that morning. The detective stated that a suspect was in custody for the robbery and asked Splitt "to look at [a] photograph [of the suspect] and tell me yes or no if he thought that was possibly someone that was involved in [Splitt's] case." When Splitt arrived at the magistrate's office, he was shown a single photograph of defendant, then in custody for the Brown robbery. Splitt identified defendant from the photograph as the man he believed had robbed his store on two prior occasions.

This pretrial identification procedure was potentially flawed in several respects. First, the detective made suggestive statements when inviting Splitt to view the single photograph of defendant. In *State v. Knight*, 282 N.C. 220, 192 S.E.2d 283 (1972), this Court held a pretrial identification procedure impermissibly suggestive where police showed the witness a single photograph of the defendant, stated that the man pictured was in custody, and asked if he was the perpetrator of a prior crime involving the witness. *Id.* at 226, 192 S.E.2d at 287; *see generally Simmons v. United States*, 390 U.S. 377, 383, 19 L. Ed. 2d 1247, 1253 (1968) ("Even if the police . . . follow the most correct photographic identification procedures and show . . . pictures of a number of individuals without indicating whom [the police] suspect, there is some danger that the witness may make an incorrect identification."). Similarly, in the case at bar, the detective told Splitt that the man pictured was in custody and made statements intimating that the authorities believed defendant had committed not only the crime for which he was detained, but also the robberies of Splitt's store.[1] *See, e.g., United States v. Wade*, 388 U.S. 218, 234, 18 L. Ed. 2d 1149, 1161 (1967) (noting that a single-suspect identification

---

1. At a pretrial hearing, even the state noted that it was "very concerned about not putting error into this case" because of "potential problems with the identification by [Splitt], because he was shown a photograph of the Defendant and asked by [a] law enforcement officer, is this the man who committed the robbery."

procedure can "clearly convey[] the suggestion to the witness that the one presented is believed guilty by the police"). Further, the detective admitted that he showed Splitt only one photograph and conceded on *voir dire* that a multiphotographic lineup is a better method for witness identification than a single-photographic showing. *See State v. Yancey*, 291 N.C. 656, 661, 231 S.E.2d 637, 640 (1977) ("Our courts have widely condemned the practice of showing suspects singly to persons for the purpose of identification."). The detective also admitted that he had ample time to put together a multiphotograph array but did not do so. The North Carolina Justice Academy (NCJA), which trains thousands of criminal justice personnel throughout the state, cautions against the use of improper identification procedures in its training materials.[2]

In sum, the Rule 404(b) evidence in the present case rested on questionable identification procedures, which in turn arose from robberies that were factually dissimilar to the robbery and murder charged in the instant case. The trial court therefore erred, under the facts and circumstances of the instant case, in admitting Splitt's testimony under Rule 404(b) of the North Carolina Rules of Evidence. Accordingly, as we cannot conclude that the admission of Splitt's testimony was harmless, *see* N.C.G.S. § 15A-1443(a) (2001), defendant is entitled to a new trial.

NEW TRIAL.

---

2. NCJA course materials counsel officers that "[b]efore conducting an identification procedure, officers should not tell a witness that they have a suspect in custody or that a [picture of the] suspect will be among the ... photographs the witness is about to view," and that "[t]here should be ... several photos in a photo lineup." Robert L. Farb, *Arrest, Search, and Investigation in North Carolina* 226 (North Carolina Institute of Government, ed., 2d ed. 1992). Trainees are also warned that "[p]resenting only one person to a witness for possible identification is a suggestive identification procedure that normally should be avoided." *Id.*