TYSON, Judge.
Sondus Scotty Spikes, Jr. ("Defendant") appeals from his convictions of robbery with a dangerous weapon and felonious possession of stolen goods. We find no error.
I. Background
John McConnell ("McConnell") was playing video games in his bedroom with his friend, Nick Stroud ("Stroud"), on 2 February 2013, along with two female acquaintances. McConnell often gathered with friends to play video games in his bedroom. McConnell knew Defendant, who had come to McConnell's house previously to socialize.
Defendant arrived at McConnell's residence along with Julius Pegram ("Pegram"). Defendant was twenty-one years old and Pegram was thirty-four years old. Defendant had known Pegram for about six months. McConnell, the victim, did not know Pegram.
Defendant and Pegram drank soda and watched McConnell and Stroud play video games. All of the guests left McConnell's residence about ten minutes after Defendant and Pegram arrived. Defendant and Pegram returned to McConnell's residence a short time later.
McConnell testified that they came to the door and defendant asked if he could use the bathroom. McConnell allowed them to come inside. Pegram and McConnell were in McConnell's bedroom, while Defendant used the bathroom. McConnell testified that Defendant came into the bedroom, shut the door behind him, and Pegram put a gun to his face. He described the gun as black and silver and thought it was a .380 caliber pistol.
Either Defendant or Pegram dumped McConnell's clothes out of a laundry basket. Pegram put Defendant's X-box gaming system, approximately 100 video games, his Louis Vuitton book bag, and two of his hats into the basket. Defendant took McConnell's cell phone from the charger. Defendant looked at McConnell and told him that he was going to "get [his] stuff back." Defendant and Pegram took the basket and ran out of the back door. Pegram told McConnell that he would shoot him if he called anyone.
McConnell was hysterical and told his roommate he had just been robbed. His roommate called the police. Officer Timothy Brackeen observed Defendant on the back porch of a residence located about a block from McConnell's residence. Defendant was frantically beating on the back door. Another officer arrived on the scene.
Officer Brackeen drew his weapon and commanded Defendant to show his hands. When Defendant failed to comply, the two officers began struggling with him at the back door. Someone inside the house opened the back door, and Defendant fled inside with the officers in pursuit.
The officers continued to struggle with Defendant on the kitchen floor. A third officer arrived to assist. At first, Defendant was face down with his right hand in his coat pocket. The officers attempted to remove Defendant's hand from his pocket and to handcuff him. They turned him over onto his back.
Defendant and the officers were located near the refrigerator, with Defendant's head against the refrigerator. During the struggle, Officer Tyler Lane heard a noise, looked between the wall and the refrigerator, and saw a silver revolver with black grips. None of the officers saw Defendant holding the gun or saw him throw or drop the gun. The officers were able to subdue Defendant on the kitchen floor and take him into custody. Approximately ten minutes elapsed between the time law enforcement received the call about the robbery and the time Officer Brackeen saw Defendant on the back porch.
The officers discovered the laundry basket containing McConnell's belongings on the back porch of the residence. McConnell's cell phone was discovered in the kitchen where Defendant was arrested.
The officers later determined the pistol found beside the refrigerator was a .32 caliber pistol and loaded. The officers recovered a box of .32 caliber ammunition with six rounds missing from an interior pocket of Defendant's coat. Investigating officers did not attempt to have McConnell identify the gun found beside the refrigerator as the gun that was employed in the robbery.
During his interview, Defendant told the officers that he and Pegram left McConnell's residence, and Pegram stated he wanted to "go back and holler at the white boy." Defendant stated the robbery was already underway when he returned from using the bathroom, he was afraid of Pegram, and he intended to return the property to McConnell. Defendant did not present evidence at trial.
The jury found Defendant guilty of robbery with a dangerous weapon and felonious possession of stolen property. The trial court sentenced Defendant within the presumptive range to a minimum of 57 and a maximum of 81 months in prison on the robbery charge, and arrested judgment on the possession of stolen goods charge. Defendant appeals.
II. Issues
Defendant argues the trial court erred by: (1) allowing into evidence an irrelevant and prejudicial photograph of Defendant with Pegram and holding a gun; and (2) instructing the jury on the theory of acting in concert.
III. Admission of the Photograph under Rule 404(b)
Defendant argues the trial court erred in admitting into evidence a photograph of Defendant and Pegram that showed Defendant holding a gun. We disagree.
A. Standard of Review
"When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, ... we look to whether the evidence supports the findings and whether the findings support the conclusions." State v. Beckelheimer,366 N.C. 127, 130, 726 S.E .2d 156, 159 (2012). We review the legal conclusion whether the evidence is, or is not, within the coverage of Rule 404(b) under a de novostandard. Id.We determine whether the evidence is relevant, and whether the circumstances presented to the trial court satisfy the similarity and temporal proximity requirements of Rule 404(b). See id.at 130, 726 S.E.2d at 158-59. "Under a de novoreview, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." State v. Williams,362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quotation marks and citation omitted).
This Court reviews the trial court's Rule 403 determination for abuse of discretion. Id.In ruling upon a defendant's argument that the trial court improperly allowed evidence under Rule 403, we determine whether the trial court abused its discretion in concluding the danger of unfair prejudice does not substantially outweigh the evidence's probative value. See id.An "[a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."State v. Hennis,323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988).
B. Rule 404(b) Analysis
North Carolina's Rules of Evidence provide:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. Admissible evidence may include evidence of an offense committed by a juvenile if it would have been a Class A, B1, B2, C, D, or E felony if committed by an adult.
N.C. Gen.Stat. § 8C-1, Rule 404(b) (2013). The list of permissible purposes set forth in the statute "is not exclusive and the fact that evidence cannot be brought within a category does not necessarily mean that the evidence is inadmissible." State v. DeLeonardo,315 N.C. 762, 770, 340 S.E.2d 350, 356 (1986).
Rule 404(b) has been interpreted by our courts as a "rule of inclusion" of the proffered evidence, requiring exclusion "if its onlyprobative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. Coffey,326 N.C. 268, 278-9, 389 S.E.2d 48, 54 (1990) (emphasis in original).
Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried.
Id.at 279, 389 S.E.2d at 54 (citation and internal quotation marks omitted).
Here, Defendant struggled with the officers on the kitchen floor as they tried to arrest him. Defendant's head was positioned against the refrigerator. One of the officers heard a noise, looked between the refrigerator and the wall, and saw a "silver-in-color revolver with black grips" on the floor. Defense counsel cross-examined the officer pertaining to Defendant's possession of the gun.
Sergeant John Hamrick and Detective Matthew Styers interviewed Defendant after his arrest. During the interview, Defendant stated he possessed a gun that evening. Defendant told police his fingerprints "may be" on the pistol found beside the refrigerator.
Defendant showed the officers a photograph of himself with Pegram on the cellphone in his possession. Defendant was holding a pistol in the photograph. A hard copy of the photograph was admitted into evidence and published to the jury.
Sgt. Hamrick testified the appearance of the gun in the photograph was "very consistent" with the appearance of the gun found beside the refrigerator. The jury was able to compare the gun in the photograph to the gun found on the kitchen floor on the evening of the robbery.
We agree with the trial court's determination that the photograph was relevant to establish whether Defendant possessed a gun during the robbery of McConnell. The State contended Defendant and Pegram acted in concert to commit the robbery. Defendant argued the State failed to prove he and Pegram operated under a common scheme or plan to rob McConnell. Whether Defendant possessed a gun on the evening of the robbery is relevant to the question of whether the two men acted in concert, and was not offered solely to show Defendant has a propensity to commit armed robbery. N.C. Gen.Stat. § 8C-1, Rule 401 (2013) ( " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); see also, State v. Whiteside,325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989) ( "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case.").
Evidence was offered to show the gun found in the kitchen, in very close proximity to Defendant upon his arrest and only a few minutes after the robbery, was similar to the gun in the photograph. Evidence of Defendant's ownership of the gun found at the time of his apprehension supports the inference that Defendant had been carrying the gun during the robbery. This evidence is relevant to impeach Defendant's argument that there was no common plan. The photograph also tended to establish that Defendant had a prior friendly relationship with Mr. Pegram, making it more likely that Mr. Pegram would have discussed with Defendant his plan to rob McConnell. The photograph was properly admitted as tending to show Defendant had the pistol on him immediately after the robbery, which would be probative of intent, preparation, plan, knowledge, and absence of mistake.
Although Rule 404(b) is a rule of inclusion, the evidence "should be carefully scrutinized in order to adequately safeguard against the improper introduction of character evidence against the accused." State v. Al-Bayyinah,356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002). "To effectuate these important evidentiary safeguards, the rule of inclusion described in Coffeyis constrained by the requirements of similarity and temporal proximity ." Id.at 154, 567 S.E.2d at 123. "Remoteness for purposes of 404(b) must be considered in light of the specific facts of each case." Beckleheimer,366 N.C. at 132, 726 S.E.2d at 160 (citation and quotation marks omitted). The photograph was time and date stamped 19 December 2012 at 4:32 p.m., less than two months before the robbery. The court observed that Defendant's dreadlocks appeared to be the same length in the photograph as shown in the videotape of his interview. The photograph was relevant to the State's theory of the case, and the circumstances presented to the trial court satisfied the similarity and temporal proximity requirements of Rule 404(b). "Once properly admitted, the weight to be given the evidence was a decision for the jury." Whiteside,325 N.C. at 398, S.E.2d 911 at 916.
C. Rule 403
Defendant argues the trial court erred by allowing the photograph under Rule 403, because the prejudicial effect of the photograph outweighs its probative value. See N.C. Gen.Stat. § 8C-1, Rule 403 (2013) ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). The State asserts this argument was waived because Defendant objected under Rule 404(b) at trial, but did not specifically object under Rule 403.
The trial court's analyses under Rule 404(b) and Rule 403 are interrelated. "When the evidence is offered for a proper purpose, the ultimate test of admissibility is whether the incidents are sufficiently similar to those in the case at bar and not so remote in time as to be more prejudicial than probative under the Rule 403 test." State v. Love,152 N.C.App. 608, 612, 568 S.E.2d 320, 323 (2002) (citations omitted), disc. review denied,357 N.C. 168, 581 S.E.2d 66 (2003). As explained above, the trial court did not err in admitting the relevant photograph under Rule 404(b) or abuse its discretion in determining the probative value was outweighed by the danger of unfair prejudice. Defendant's argument is overruled.
IV. Jury Instruction on Acting in Concert
Defendant argues the trial court erred by instructing the jury on the theory of acting in concert, because the instruction was confusing and there was no evidence of a common purpose. We disagree.
A. Standard of Review
We review the jury instruction:
contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed.... The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by [the] instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.
State v. Blizzard,169 N.C.App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (internal citations and quotations omitted). The choice of jury instructions rests "within the trial court's discretion and will not be overturned absent a showing of abuse of discretion." State v. Nicholson,355 N.C. 1, 66, 558 S.E.2d 109, 152 (citation omitted), cert. denied,537 U.S. 845, 123 S.Ct. 178, 154 L.Ed.2d 71 (2002).
B. Analysis
The trial court instructed the jury as follows:
For a person to be guilty of a crime, it is not necessary that he do all the acts necessary to constitute a crime. If one or more person(s) join in a common purpose to commit Robbery or Possession of Stolen Goods, each of them, if actually or constructively present, is not only guilty of that crime if the other person commits the crime but also guilty of any other crime committed by the other in the pursuance of committing Robbery or Possession of Stolen Goods wherein acting in plausible consequence thereof.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant, acting either by himself or acting together with other persons, committed Robbery with a Firearm in that while in possession of a firearm, took and carried away property from the person or presence of a person without his voluntary consent by endangering or threatening his life with the use or threatened use of a firearm, the defendant knowing that he was not entitled to take the property and intending to deprive that person of its use permanently, it would be your duty to return a verdict of guilty.
If you find from the evidence beyond a reasonable doubt that on or about the alleged date, the defendant, acting either by himself or acting together with other persons, committed the criminal act of Felonious Possession of Stolen Goods, in that an Xbox, Xbox games and other video equipment was stolen ... and that on or about the alleged date, the defendant possessed this property and knew or had reasonable grounds to believe that it was stolen, and the defendant possessed this property for a dishonest purpose, it would be your duty to return a verdict of guilty of Felonious Possession of Stolen Goods. And if you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of Felonious Possession of Stolen Goods but must determine whether the defendant is guilty of Non-felonious Possession of Stolen Goods.
During deliberations, the jury requested the court to "provide [them] the law on common purpose for concert." The trial court reread the jury instruction above, and Defendant did not object.
Defendant argues the instructions were in error because they were confusing to the jury. At trial, Defendant objected to the trial court instructing the jury on the theory of acting in concert, because "there was not sufficient evidence to show that the two co-defendants joined in a common purpose to commit robbery or possession of stolen goods."
Defendant did not object to the language of the instruction as misleading or confusing to the jury, and has not argued the error amounted to plain error. Defendant's argument regarding the language of the jury instruction is waived. N.C. R.App. P. 10(a)(1) (2013) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."); State v. Eason,328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991).
Defendant also argues the State presented insufficient evidence to support a jury instruction on the theory of acting in concert where the State's evidence showed that Defendant did not intend to permanently deprive McConnell of his property. According to McConnell's testimony, Defendant took McConnell's cellphone, and stated to him, "I'm going to get your stuff back, Bro." During his interview, Defendant told the officers he intended to return the property to McConnell.
Our Supreme Court has explained the doctrine of acting in concert as follows:
If two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose ... or as a natural or probable consequence thereof.
State v. Barnes,345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997) (citation and quotation marks omitted).
Here, evidence was presented to show Defendant arrived with Pegram at McConnell's house and the two left together. They returned together to McConnell's house shortly thereafter. Both Defendant and Pegram took items from McConnell's room while Pegram held a gun to McConnell. Evidence was also presented from which a jury could reasonably infer that Defendant either provided the gun that Pegram used in the robbery, or that Defendant carried a gun during the robbery. Either could support a finding that Defendant had a common plan with Pegram to commit the robbery.
Whether defendant acted in concert with Pegram, and had the intent to permanently deprive McConnell of his property were questions of fact to be determined by the jury. The evidence was sufficient to allow the jury to determine whether Defendant possessed the requisite intent to support a conviction for the crime of robbery with a dangerous weapon.
V. Conclusion
The trial court did not abuse its discretion in admitting into evidence the photograph of Defendant and Pegram, depicting Defendant holding a gun similar to the one found near Defendant upon his arrest. The trial court properly gave a jury instruction on acting in concert where evidence was presented to show Defendant and Pegram engaged in a common plan to rob McConnell. Defendant received a fair trial, free from errors he preserved and argued.
NO ERROR.
Judges CALABRIA and STROUD concur.
Report per Rule 30(e)
Opinion
Cleveland County, No. 13 CRS 50711.
Appeal by defendant from judgment entered 16 January 2014 by Judge Hugh B. Lewis in Cleveland County Superior Court. Heard in the Court of Appeals 6 May 2014.