BRYANT, Judge.
Where no valid indictment was presented before the trial court, the trial court lacked jurisdiction to enter judgment against defendant, and we vacate and remand as to that judgment accordingly. Where the trial court reviewed evidence and found that it tended to show defendant's proof of identity and was not more prejudicial than probative, the trial court did not abuse its discretion in admitting such evidence.
On 5 June 2012, defendant Steven Kent Faison was indicted on three counts each of felony breaking and entering and felony larceny. On 24 June 2012, defendant was indicted as an habitual felon. The charges came on for trial during the 5 March 2013 criminal session of Wake County Superior Court, the Honorable Paul C. Ridgeway, Judge presiding. At trial, the State's evidence tended to show the following.
Three break-ins occurred on the nights of 13, 19, and 25 December 2011 at Mitch's Tavern, a restaurant owned by Mitch Hazouri in Raleigh, North Carolina. On each occasion, the restaurant's night-vision surveillance cameras recorded the intruder carrying bottles of liquor and beer from the premises in a garbage can or plastic bag. Hazouri provided copies of the surveillance videos to the Raleigh Police Department, which distributed a "be on the lookout" ("BOLO") alert describing the physical appearance and clothing of the intruder portrayed in the video.
Sean Dunbar, loss prevention coordinator for a Harris Teeter grocery store in Raleigh, received the BOLO alert on 2 January 2012 and determined that the description of the suspect's clothing was consistent with the clothing worn by defendant in Harris Teeter on multiple occasions throughout December 2011. Specifically, defendant wore jeans, a black Tap Out hat, and a blue jacket with a "very distinctive" emblem on the bottom. Beneath the blue jacket, defendant wore a white or khaki-colored sweatshirt. Dunbar had personally encountered defendant "wearing the same clothing" in Harris Teeter on three different occasions in December 2011. The store's surveillance cameras had also captured video of defendant "every day th[e] week" of 27 December 2011 "wearing the same clothes[.]"
Dunbar contacted police about the BOLO alert and provided them with the still images of defendant taken by Harris Teeter surveillance cameras on 27 December 2011. Dunbar also saw defendant in person on 2 January 2012 and observed that "[h]e was wearing th[e] exact outfit" shown in the video.
Raleigh Police Detective I. Perez was assigned to investigate the Mitch's Tavern break-ins. Comparing the intruder shown in the restaurant's surveillance video with the images of defendant provided by Dunbar from Harris Teeter, Detective Perez noted that they both wore "some type of head gear or a hat [,]" as well as a "[d]ark outer jacket with an emblem at the bottom left hand side[,]" a "[t]an or [ ] gray fleece jacket" underneath the dark jacket, and "[g]ray or[ ] light colored pants."
The State provided the jury with the 13, 19, and 25 December 2011 surveillance videos from Mitch's Tavern and the still images of defendant taken in Harris Teeter on 27 December 2011. The jury also reviewed photographs of "a gray or light colored zipped up fleece with a high collar" seized from defendant by Detective Perez and of defendant wearing the garment on 2 January 2012. Hazouri also identified defendant in open court as the person he saw pushing a garbage can full of liquor bottles and the restaurant's computer down the street behind the restaurant after a previous break-in in October 2010. Detective Perez testified that defendant previously admitted to another break-in at Mitch's Tavern in 2007, in which the intruder fled after being confronted by Hazouri at the cash register. Officer D. Davis, who responded to the 2007 break-in, testified that defendant had been detained as a suspect and that Hazouri had positively identified him as the perpetrator.
On 7 March 2013, a jury found defendant guilty of three counts of felonious breaking or entering and three counts of felonious larceny. Defendant pled guilty to attaining habitual felon status. The trial court consolidated defendant's offenses for judgment and sentenced him as an habitual felon to an active prison term of 128 to 166 months. Defendant filed a written notice of appeal on 15 May 2013, which was dismissed by this Court on 4 November for being untimely filed. Defendant filed a petition for writ of certiorari on 3 January 2014, which this Court granted on 14 January 2014.
On appeal, defendant raises two issues as to whether the trial court erred by (I) trying and sentencing defendant without an indictment, and (II) allowing a Harris Teeter loss prevention coordinator to testify as to why he had kept still images of defendant.
I.
Defendant contends the trial court erred by trying and sentencing him without an indictment. Specifically, defendant argues that the trial court lacked jurisdiction to enter judgment on his convictions in 12 CRS 201477 in the absence of a true bill of indictment supporting these charges. We agree.
Although the issue of subject matter jurisdiction may be raised for the first time on appeal, State v. Tate,169 N.C. 373, 374, 85 S.E. 383, 383 (1915) (citations omitted), we note the trial court addressed the issue of the missing indictment prior to trial, as follows:
THE COURT: Okay. Let's call for a jury. Mr. [Prosecutor], I'm looking for a copy of the indictment [in 12 CRS 201477]. The original file stamped copy is misplaced or not in the file.
[PROSECUTOR]: And, Your Honor, I have a copy of it. And my understanding is the copy that's signed by the grand jury foreman, there's two copies made of that. One goes to the defense attorney and one goes in the file. And so I don't have another copy that's signed. I believe that it was true billed by the grand jury. And I can bring evidence of that before the Court if that's necessary.
See generallyN.C. Gen.Stat. § 15A-644(a)(5) (2013) (requiring "[t]he signature of the foreman or acting foreman of the grand jury attesting the concurrence of 12 or more grand jurors in the finding of a true bill of indictment"). Despite this offer, the prosecution did not subsequently produce a true bill of indictment in 12 CRS 201477, nor does the indictment appear in the record on appeal. The record instead includes a memorandum from a Wake County Superior Court deputy clerk, filed 25 September 2014, stating that no indictment can be found in the court file or in the prosecutor or defense counsel's files. See generallyN.C. Gen.Stat. § 15A-628(d) (2013) ("The clerk must keep a permanent record of all matters returned by the grand jury [.]"). The State now concedes that no pleading exists to support defendant's convictions in 12 CRS 201477.
"The pleading in felony cases ... must be a bill of indictment, unless there is a waiver of the bill of indictment as provided in G.S. 15A-642. If there is a waiver, the pleading must be an information." Id.§ 15A-923(a) (2013). "It is well settled that a valid bill of indictment [or information] is essential to the jurisdiction of the trial court to try an accused for a felony." State v. Barnett,--- N.C.App. ----, ----, 733 S.E.2d 95, 97 (2012) (citations and quotation omitted). "When the record shows a lack of jurisdiction in the lower court, the appropriate action on the part of the appellate court is to arrest judgment or vacate any order entered without authority." State v.. Felmet,302 N.C. 173, 176, 273 S.E.2d 708, 711 (1981) (citations omitted). Accordingly, we vacate the trial court's judgment as to defendant's convictions in 12 CRS 201477 and remand for resentencing on the remaining convictions. See State v. Petersilie,334 N.C. 169, 176, 432 S.E.2d 832, 836 (1993) ; State v. Pierce,--- N.C.App. ----, ---- 767 S.E.2d 860, 870 (2014).
II.
Defendant next argues that the trial court erred by allowing Dunbar, a Harris Teeter loss prevention coordinator, to explain his reason for preserving still images of defendant recorded by Harris Teeter's surveillance cameras on 27 December 2011. When asked why he had kept the images of defendant he provided to police in response to the BOLO alert on 2 January 2012, Dunbar testified that he retained the images "for a different thing, a case that we had with them." The trial court overruled defendant's objection to this testimony as follows:
THE COURT: All right. I am going to just simply overrule the objection. The reference to the fact of other incidents that have occurred at the store, I don't believe that in and of itself is necessarily unduly prejudicial if it explains why this witness retained certain photographs or had certain photographs made. I think that's information that the jury is entitled to hear and is probative. But beyond that any description of those incidents or any characterization of those incidents would be unduly prejudicial and non [-] probative.
Defendant now contends that Dunbar's reference to "a different thing" or "case" improperly "alerted the jury that [defendant] was a suspect in at least one other theft[,]" i.e., at Harris Teeter. He notes that the challenged testimony was not needed to lay a foundation for admitting the photographic evidence. SeeN .C. Gen.Stat. §§ 8-97, 8C-1, Rule 901(a), (2013). To the extent that Dunbar's explanation was otherwise relevant and admissible, defendant insists it "unfairly prejudiced" him in the eyes of the jury by implying that he had a "proclivity" for theft. Therefore, the court should have sustained his objection pursuant to N.C. Gen.Stat. § 8C-1, Rule 403. We disagree.
Under our rules of evidence, relevant evidence is generally admissible. N.C. Gen.Stat. § 8C-1, Rule 402 (2013). Evidence is deemed "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Id.§ 8C-1, Rule 401 (2013). Moreover,
[i]n criminal cases, every circumstance that is calculated to throw any light upon the supposed crime is admissible. In order to be relevant, ... evidence need not bear directly on the question in issue if it is helpful to understand the conduct of the parties, their motives, or if it reasonably allows the jury to draw an inference as to a disputed fact. The value of the evidence need only be slight. In addition, ... [e]ven though a trial court's rulings on relevancy technically are not discretionary ... such rulings are given great deference on appeal.
State v. Miller,197 N.C.App. 78, 86-87, 676 S.E.2d 546, 551-52 (2009) (citations and quotation omitted).
The general rule of admissibility for relevant evidence is subject to two limitations germane to defendant's appeal. First, under Rule 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" to a party. N.C. Gen.Stat. § 8C-1, Rule 403 (2013). "The exclusion of evidence under Rule 403 is a matter generally left to the sound discretion of the trial court, which is left undisturbed unless the trial court's ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision." State v. Badgett,361 N.C. 234, 244-45, 644 S.E.2d 206, 212-13 (2007) (citations and quotation omitted).
Second, under Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen.Stat. § 8C-1, Rule 404(b) (2013). Such evidence "may, however, be admissible for other purposes, such as proof of ... identity[.]" Id.Our courts have construed Rule 404(b) to "state[ ] a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. Al-Bayyinah,356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002) (citation, quotation, and emphasis omitted). In order to be admissible under Rule 404(b), a defendant's prior acts must be both factually similar and temporally proximate to the charged crime. Id.at 154-55, 567 S.E.2d at 123 (citations omitted). Whether evidence falls within the ambit of Rule 404(b) is a conclusion of law reviewed de novo. State v. Beckelheimer,366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012) (citation omitted).
We agree with the trial court that Dunbar's account of how he came to possess the still images of defendant he provided to police on 2 January 2012 was relevant evidence admissible under Rules 401 and 402. This testimony tended to establish Dunbar's familiarity with the "very distinctive" clothing worn by defendant at the time of the Mitch's Tavern break-ins and to explain how Dunbar both recognized defendant as a potential subject of the BOLO alert on 2 January 2012 and was able to provide police with images of defendant taken from his store's surveillance cameras on 27 December 2011.
We further find no abuse of the trial court's discretion under Rule 403 in admitting Dunbar's testimony that he retained the images of defendant "for a different thing, a case that we had with [the police]." Inasmuch as Dunbar did not accuse defendant of engaging in any illegal or improper activity in Harris Teeter, we cannot say the trial court abused its discretion in finding no unfair prejudice to defendant.
Moreover, we are not convinced that Dunbar's reference to "a different thing, a case that we had with [the police]" constitutes evidence of defendant's prior acts for purposes of Rule 404(b). See State v. Taylor,117 N.C.App. 644, 650, 453 S.E.2d 225, 229 (1995) ("We are not persuaded that testimony of [the] defendant's flight from [an officer] on an earlier occasion, without more, is evidence of other crimes, wrongs, or acts, within the purview of Rule 404(b)."). As previously mentioned, Dunbar did not describe any improper activity by defendant or disclose the nature of the other "case" that led him to preserve portions of the 27 December 2011 surveillance video. Even assuming arguendothat this testimony is covered by Rule 404(b), we conclude that it was admissible for the purpose of establishing Dunbar's familiarity with defendant and, by extension, defendant's identity as the person depicted in the surveillance videos. See State v. Reid,175 N.C.App. 613, 624, 625 S.E.2d 575, 584 (2006) ; Taylor,117 N.C.App. at 651, 453 S.E.2d at 229 ; cf. State v. Collins,216 N.C.App. 249, 257, 716 S.E.2d 255, 261 (2011) (allowing lay opinion testimony under N.C. Gen.Stat. § 8C-1, Rule 701 (2013), where the witness "would be in a better position than the jury to identify defendant in the videotape"). Defendant's argument is overruled.
Accordingly, we vacate and remand as to defendant's conviction in 12 CRS 201477, and find no error as to defendant's convictions in 12 CRS 201475-76 and 12 CRS 6691.
NO ERROR IN PART; VACATED AND REMANDED IN PART.
Judges DIETZ and TYSON concur.
Report per Rule 30(e).
Opinion
On writ of certiorari to review judgment entered 7 March 2013 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 1 June 2015.