McCULLOUGH, Judge.
 

 *738
 
 Calvin Sherwood Watts ("defendant") appeals from judgments entered on his convictions for attempted first-degree rape and three counts of first-degree sexual offense with a child. For the following reasons, we grant defendant a new trial.
 

 I.
 
 Background
 

 Based on allegations of sexual abuse by an eleven-year-old girl, Sally
 
 [1]
 
 , arrest warrants were issued and defendant was arrested on 27 June 2011. Search warrants were thereafter issued and executed for a search of defendant's mobile home and to obtain samples of defendant's saliva on 27 and 29 June 2011 and 6 July 2011. On 8 July 2011, a Columbus County Grand Jury indicted defendant on one count of first-degree rape in violation of N.C. Gen.Stat. § 14-27.2(a)(1)
 
 [2]
 
 , three counts of first-degree sexual offense with a child in violation of N.C. Gen.Stat. § 14-27.4(a)(1), and one count of kidnapping in violation of N.C. Gen.Stat. § 14-39.
 

 Numerous pretrial motions and petitions filed by both sides were heard and considered by various judges prior to this case coming on for trial in Columbus County Superior Court before the Honorable James Gregory Bell on 27 October 2014.
 

 The State's evidence at trial tended to show defendant was the grandfather of Sally's cousins, but also like a grandfather to Sally. On 25 June 2011, Sally was eleven years old. That day, she spent the afternoon playing kickball in her aunt's front yard until it began getting late.
 

 *739
 
 At that time, Sally asked her mother if she could go stay with defendant. After Sally's mother and defendant agreed, defendant came to pick Sally up on a moped. Sally testified that "[defendant] was supposed to bring his sister's car so we could all go but [defendant] only brought the moped and nobody else really wanted to go, so I just went."
 

 Defendant made one stop at a friend's house on the way to defendant's residence. Sally testified that while at the friend's house, defendant sat close to her on the couch and kept putting his hand on her thigh. Sally told defendant to stop and asked defendant to take her home, but defendant did neither. When defendant's friend told them they had to leave, they rode around on the moped for a while before going to defendant's mobile home. It was dark by the time they arrived at defendant's mobile home. Sally testified that she thought defendant was drunk because defendant could hardly make it up the stairs at his friend's house and because the moped was swerving as defendant was driving.
 

 As Sally was sitting on defendant's couch watching television that night, defendant sat down on the couch with her and began grabbing her thigh again. Sally asked defendant to stop and tried to push defendant away, but defendant did not stop. Defendant then pulled Sally to the bedroom by her arm, pushed Sally onto the bed, and began to forcibly remove Sally's clothes. Sally attempted to get up but defendant kept pushing her back down on the bed. Sally began to scream and believes that she blacked out
 
 *269
 
 because the next thing she remembers is waking up on the living room floor. When she woke up, defendant was on top of her with his hands around her throat. Sally began to scream and defendant told her to be quiet or he would hurt her.
 

 Defendant then forced Sally to watch a pornographic movie and "made [her] do what was on it." Sally described fellatio and cunnilingus. Sally testified defendant then attempted to rape her but "[h]e couldn't get in." Defendant then used a beer bottle. Sally testified that "[defendant] kept sticking [the beer bottle] in [her] and [she] told him to stop, it hurt, but [defendant] didn't listen." Sally also testified that defendant "kept sticking his finger in and out[.]" Sally could not remember exactly when, but testified that at some point during the sexual abuse, they moved back to the bedroom.
 

 Sally tried to use a phone in the bedroom to call her mother and tried to escape out of a bedroom window at different points when defendant was not in the room with her, but her attempts were unsuccessful.
 

 The next morning, while defendant was still asleep, Sally attempted to call her mother from defendant's sister's house, which was next door
 
 *740
 
 to defendant's mobile home, and then attempted to run to her aunt's house. Those attempts to get help, like her prior attempts, were unsuccessful. As Sally was attempting to flee, defendant woke up, began calling for Sally, and then grabbed Sally and took her back to his mobile home. Later that morning, after receiving a call from Sally's mother, defendant took Sally home. Sally testified that "on the way home [defendant] kept saying he was sorry, that he was drunk and he didn't mean it, he didn't know what he was doing." Defendant threatened to hurt Sally and her family if she told anyone. Because Sally was scared, she lied to defendant and told him that "[she] wouldn't tell nobody."
 

 Yet, upon repeated questioning from her mother and aunt concerning what was wrong, Sally told her aunt what happened. Sally's aunt then told Sally's mother that defendant had hurt Sally. Sally recalled that she was then taken to the hospital, followed by the police station.
 

 At the close of the State's evidence, defendant moved to dismiss the first-degree rape charge. The trial court granted defendant's motion, but allowed the State to proceed on the lesser-included charge of attempted first-degree rape. Defendant then moved to dismiss the first-degree sexual offense charges and the kidnapping charge. The trial court denied those motions.
 

 Defendant called various witnesses to testify in his defense and took the witness stand to refute Sally's testimony. Defendant acknowledged that Sally and Sally's mother called him to ask if Sally could stay with him on the night in question. Defendant also testified that he agreed Sally could stay with him, picked Sally up on a moped, stopped by his friend's house, and then took Sally to his mobile home where she stayed the night. But defendant denied being drunk and denied all accusations of sexual abuse.
 

 On 31 October 2014, the jury returned verdicts finding defendant guilty on all charges-one count of attempted first-degree rape, three counts of first-degree sexual offense, and one count of first-degree kidnapping. In judgments entered 31 October 2014, the trial court sentenced defendant to a term of 180 to 225 months imprisonment for the attempted first-degree rape conviction, consolidated the three first-degree sexual offense convictions and sentenced defendant to a consecutive term of 317 to 390 months imprisonment, and arrested judgment on defendant's conviction for first-degree kidnapping. The trial court also entered an order concerning sex offender registration and satellite-based monitoring.
 

 *741
 
 Following sentencing, defendant moved to set aside the verdict and to declare a mistrial, which the trial court denied. Defendant then gave notice of appeal in open court and in writing.
 

 II.
 
 Discussion
 

 Defendant raises three issues on appeal: whether the trial court (1) erred by admitting Rule 404(b) testimony, (2) erred by refusing his request for an instruction on the Rule 404(b) testimony, and (3) plainly erred
 
 *270
 
 by allowing testimony of a nurse practitioner who examined Sally.
 

 A.
 
 Rule 404(b) Evidence
 

 Defendant first argues the trial court erred in admitting the testimony of Mattie Buffkin over his objection. We agree.
 

 Among the many pretrial filings, on 23 October 2014, the State filed a notice of intent to offer Rule 404(b) evidence "in order to show proof of motive, opportunity, intent, preparation, plan and knowledge[.]" In response to the State's notice, defendant filed a motion in limine and an accompanying memorandum to prevent the admission of the State's purported Rule 404(b) evidence. Specifically, defendant contended the " Rule 404(b) evidence, about a second degree rape and felonious breaking or entering which allegedly took place in 2003, [was] inadmissible in the current trial[ ]" because "the said crimes with which ... defendant was charged but never tried [were] to [sic] distant in time, to dissimilar in circumstances and its introduction [was] sought for purposes not provided for in ... Rule 404(b)." Thus, defendant argued "the evidence fails to comply with Rule 404(b) and cannot meet the balancing test required for introduction under Rule 403."
 

 After the jury was empaneled but before opening statements were made, the trial court heard arguments on the Rule 404(b) issue. It was revealed during the hearing that Buffkin made allegations in 2003 that resulted in defendant being charged with rape and breaking and entering. Those charges, however, were dismissed in 2005. Upon hearing both sides' arguments, the trial court took the issue under advisement, indicating it would conduct a
 
 voir dire
 
 hearing when the witness was called.
 

 The following afternoon, during a break in the presentation of the State's evidence, the State informed the trial court that its next witness would offer the Rule 404(b) evidence. Then, before the jury returned from break, the State called Buffkin as a witness and the trial court conducted a
 
 voir dire
 
 hearing.
 

 *742
 
 During
 
 voir dire,
 
 Buffkin identified defendant and explained that she knew defendant from when she lived with defendant's sister for approximately half a year. Buffkin testified that in 2003, when she was seventeen years old, she moved out of defendant's sister's house and into an apartment with her boyfriend, whom she later married and divorced. Buffkin recalled that she was alone in the apartment on the afternoon of 19 November 2003 when she heard a knock on her door. Buffkin asked who it was and heard a voice respond "your daddy." Buffkin then proceeded to open the door, at which time defendant forced his way into the apartment. Buffkin testified that defendant grabbed her and pushed her onto the bed. With a razor knife to Buffkin's throat, defendant took Buffkin's pants off, crawled on top of her, and proceeded to rape her. Buffkin testified that she cried and told defendant to stop; but defendant threatened to kill Buffkin if she did not shut up. Buffkin also recalled that before defendant left the apartment, he threatened that he would kill her and her family if she told anybody what happened. Defendant then left. Hours later when Buffkin's boyfriend returned home from work, Buffkin told him what happened and they reported the incident to the police. Buffkin testified that she completed a rape kit at the hospital and was told by the police that they would notify her if they needed her to do anything else, but Buffkin never heard anything further about the case.
 

 Based on the
 
 voir dire,
 
 the State argued Buffkin's testimony was "more probative than prejudice [sic] to show that [defendant] ha[d] a motive, means, manner, opportunity, [and] intent[.]" The State also pointed to similarities in the alleged incidents-namely that defendant finds young girls alone, takes sexual advantage of them by force, and threatens to kill the victim and the victim's family if the victim tells anyone. In response, the defense distinguished the two alleged incidents and argued the prejudicial effect of Buffkin's testimony greatly outweighed its probative value given the limited evidence of defendant's guilt in the present case.
 

 Following a conference in chambers, the trial court denied defendant's motion in limine and allowed Buffkin to testify in front of the jury over defendant's repeated objections.
 

 *271
 
 Thereafter, defendant "move[d] to strike [Buffkin's testimony, which closely mirrored her
 
 voir dire
 
 testimony,] and ask [ed] for an instruction and in the alternative ask[ed] for a mistrial." The trial court denied defendant's motions.
 

 Now in the first issue on appeal, defendant asserts the trial court erred in admitting Buffkins' testimony over his objections. Defendant contends the testimony was admitted in violation of N.C. Gen.Stat. § 8C-1, Rules 404(b) and 403.
 

 *743
 
 The pertinent portion of Rule 404(b) provides that
 

 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
 

 N.C. Gen.Stat. § 8C-1, Rule 404(b) (2015). In
 
 State v. Coffey,
 

 326 N.C. 268
 
 ,
 
 389 S.E.2d 48
 
 (1990), our Supreme Court recognized that Rule 404(b)
 

 state[s] a clear general rule of
 
 inclusion
 
 of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but
 
 one exception
 
 requiring its exclusion if its
 
 only
 
 probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged. "Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also 'is relevant for some purpose
 
 other than
 
 to show that defendant has the propensity for the type of conduct for which he is being tried.' "
 

 Id.
 
 at 278-79,
 
 389 S.E.2d at 54
 
 (quoting
 
 State v. Bagley,
 

 321 N.C. 201
 
 , 206,
 
 362 S.E.2d 244
 
 , 247 (1987) (quoting
 
 State v. Morgan,
 

 315 N.C. 626
 
 , 637,
 
 340 S.E.2d 84
 
 , 91 (1986) )). Yet, "the rule of inclusion described in
 
 Coffey
 
 is constrained by the requirements of similarity and temporal proximity."
 
 State v. Al-Bayyinah,
 

 356 N.C. 150
 
 , 154,
 
 567 S.E.2d 120
 
 , 123 (2002). Furthermore, even if admissible under Rule 404(b), Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen.Stat. § 8C-1, Rule 403 (2015).
 

 In
 
 State v. Beckelheimer,
 

 366 N.C. 127
 
 ,
 
 726 S.E.2d 156
 
 (2012), our Supreme Court clarified the appropriate standard of review for a trial court's decision to admit evidence under Rule 404(b).
 

 Though this Court has not used the term de novo to describe its own review of 404(b) evidence, we have consistently engaged in a fact-based inquiry under Rule 404(b) while applying an abuse of discretion standard to
 
 *744
 
 the subsequent balancing of probative value and unfair prejudice under Rule 403. For the purpose of clarity, we now explicitly hold that when analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, ... we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.
 

 Id.
 
 at 130,
 
 726 S.E.2d at 158-59
 
 (internal citations omitted).
 

 In this case, the trial court did not issue an order with explicit findings and conclusion, but did explain the denial of defendant's motion in limine as follows:
 

 The Court will find that under 404(b) that this other act is admissible and that it shows he acted for the purpose of showing opportunity and that in both instances the defendant found a minor child alone, sexually assaulted the minor child and that in both instances the defendant, Mr. Watts, told the minor child after the assaults, that he would kill the minor child and the minor child's family.
 

 *272
 
 In both instances it shows that the defendant had a plan to separate the minor child in each case from the child's family or boyfriend and the defendant used force for the sexual assault and threatened to kill the minor child and family members and was an acquaintance of both.
 

 The Court also finds that the probative value in this case and this testimony outweighs any prejudicial value that the testimony might have.
 

 Defendant now argues the evidence was not relevant for the purposes identified by the trial court-to show an opportunity or a plan. Defendant further argues that the prior alleged incident was not sufficiently similar and/or was too far removed from the alleged incident in this case to be admissible under Rule 404(b). Lastly, defendant argues Buffkin's testimony was more prejudicial than probative and the trial court abused its discretion in performing the Rule 403 analysis.
 

 *745
 
 At the outset, we recognize that "North Carolina courts have been consistently liberal in admitting evidence of similar sex offenses in trials on sexual crime charges."
 
 State v. Jacob,
 

 113 N.C.App. 605
 
 , 608,
 
 439 S.E.2d 812
 
 , 813 (1994). Nevertheless, we hold the court erred in admitting Buffkin's testimony under Rule 404(b) in this case.
 

 Although the purposes listed in Rule 404(b) for which evidence of other crimes, wrongs, or acts are admissible are not exhaustive, in this case the trial court specifically identified opportunity and plan. In response to defendant's contention that Buffkin's testimony was not relevant for those purposes, the State acknowledges the trial court's ruling was "perhaps inartfully worded[,]" but asserts Buffkin's testimony was admissible for purposes of showing defendant's
 
 modus operandi,
 
 motive, intent, and state of mind. We address the purposes identified by the trial court below in admitting the testimony into the evidence at trial.
 

 We first hold the trial court erred in determining Buffkin's testimony was relevant to show opportunity. In
 
 State v. McAbee,
 

 120 N.C.App. 674
 
 ,
 
 463 S.E.2d 281
 
 , (1995),
 
 disc. rev. denied,
 

 342 N.C. 662
 
 ,
 
 467 S.E.2d 730
 
 (1996), a defendant convicted of murdering his girlfriend's four-month old daughter by shaking challenged the admission of testimony concerning his unemployment on the basis that the testimony was character evidence admitted in violation of Rule 404.
 
 Id.
 
 at 680,
 
 463 S.E.2d at 284
 
 . Although this Court held the defendant waived his earlier objection to the testimony when similar evidence was later admitted without objection,
 
 id.
 
 at 680,
 
 463 S.E.2d at 285
 
 , this Court additionally noted the evidence of defendant's unemployment "was not character evidence used for the purpose of proving that [the] defendant acted in conformity therewith."
 
 Id.
 
 at 681,
 
 463 S.E.2d at 285
 
 . This Court explained that the evidence "helped demonstrate access and opportunity for defendant to have committed the crime because he was frequently at home with the child."
 

 Id.
 

 Thus, the evidence in
 
 McAbee
 
 was proper under Rule 404(b). In contrast to
 
 McAbee,
 
 in the present case, there is no reasonable possibility that Buffkin's testimony concerning an alleged sexual assault eight years prior was relevant to show defendant's opportunity to commit the crimes now charged.
 

 Concerning the trial court's determination that Buffkin's testimony was relevant to show defendant had a plan, it is clear from the trial court's explanation that the trial court was referring to defendant's use of a common plan, scheme, or, as the State suggests, a
 
 modus operandi.
 
 This Court has long recognized and routinely held that evidence of prior sexual misconduct is admissible to show a common plan or scheme.
 
 See
 

 Jacob,
 

 113 N.C.App. 605
 
 ,
 
 439 S.E.2d 812
 
 ,
 
 *746
 

 Beckelheimer,
 

 366 N.C. 127
 
 ,
 
 726 S.E.2d 156
 
 . Yet, as with all Rule 404(b) evidence, "[i]n order to be admissible, evidence of prior sexual misconduct admitted to show a common plan or scheme must be sufficiently similar in nature and not too remote in time."
 
 Jacob,
 

 113 N.C.App. at 610
 
 ,
 
 439 S.E.2d at
 
 815 ;
 
 see also
 

 Al-Bayyinah,
 

 356 N.C. at 154
 
 ,
 
 567 S.E.2d at 123
 
 ("[T]he rule of inclusion described in
 
 Coffey
 
 is constrained by the requirements of similarity and temporal proximity.").
 
 *273
 
 In
 
 State v. Stager,
 

 329 N.C. 278
 
 ,
 
 406 S.E.2d 876
 
 (1991), our Supreme Court explained that
 

 [u]nder Rule 404(b) a prior act or crime is "similar" if there are some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both. However, it is not necessary that the similarities between the two situations rise to the level of the unique and bizarre.
 

 Id.
 
 at 304,
 
 406 S.E.2d at 890-91
 
 (internal quotation marks, citations, and emphasis omitted). "Remoteness for purposes of 404(b) must be considered in light of the specific facts of each case and the purposes for which the evidence is being offered[,]"
 
 State v. Aldridge,
 

 139 N.C.App. 706
 
 , 714,
 
 534 S.E.2d 629
 
 , 635,
 
 disc. rev. denied and appeal dismissed,
 

 353 N.C. 269
 
 ,
 
 546 S.E.2d 114
 
 (2000), and "generally goes to the weight of the evidence not its admissibility."
 
 State v. Summers,
 

 177 N.C.App. 691
 
 , 697,
 
 629 S.E.2d 902
 
 , 907,
 
 disc. rev. denied and appeal dismissed,
 

 360 N.C. 653
 
 ,
 
 637 S.E.2d 192
 
 (2006).
 

 On appeal of convictions for attempted robbery with a dangerous weapon and felony murder in
 
 Al-Bayyinah, supra,
 
 the defendant challenged the trial court's admission of testimony concerning two robberies which occurred approximately one month prior to the attempted robbery for which the defendant was on trial. In reviewing the admission of the testimony under Rule 404(b), our Supreme Court granted the defendant a new trial explaining as follows:
 

 Assuming, without deciding, that defendant committed the [prior] robberies, substantial evidence of similarity among the prior bad acts and the crimes charged is nonetheless lacking. The details of the [prior] robberies were generic to the act of robbery: The robber wore dark, nondescript clothing that obscured his face; carried a weapon; demanded money; and fled upon receiving it....
 

 ....
 

 *747
 
 In essence, [the witness'] testimony described robberies that were factually dissimilar to the robbery and murder charged in the instant case. The [S]tate offered evidence showing that [the witness] was robbed and that defendant may have committed the offenses. The [S]tate failed to show, however, that sufficient similarities existed between the [prior] robberies and the present robbery and murder beyond those characteristics inherent to most armed robberies, i.e., use of a weapon, a demand for money, immediate flight.
 

 Al-Bayyinah,
 

 356 N.C. at 155
 
 ,
 
 567 S.E.2d at 123
 
 .
 

 In this case, the trial court noted the following similarities in its explanation as to why it denied defendant's motion in limine: both instances involved the sexual assault of minors, the minors were alone at the time of the assaults, defendant was an acquaintance of the minors, defendant used force, and defendant threatened to kill each minor and the minors' families. Like our Supreme Court in
 
 Al-Bayyinah,
 
 we do not find these similarities unusual to the crimes charged. Moreover, we think the trial court's broad labelling of the similarities disguises significant differences in the sexual assaults.
 

 First, Sally was eleven years old at the time of the alleged sexual assault in this case. In comparison, Buffkin was seventeen when she was allegedly sexually assaulted by defendant. Although both were minors in that they were under the age of eighteen, they were not that close in age. What is more, defendant was charged in the present case with first-degree rape and first-degree sexual offense with a child, both offenses that require that the victim be under the age of thirteen.
 
 See
 
 N.C. Gen.Stat. §§ 14-27.2(a)(1) and 14-27.4(a)(1). It is clear from those statutes concerning the sexual offenses charged in this case,
 
 see also
 
 N.C. Gen.Stat. § 14-27.7A (defining statutory rape of a person 13, 14, or 15 years old), that the law delineates differences in sexual offenses based on the age of a victim. It is also clear that Buffkin, at age seventeen at the time of the alleged sexual assault, was not within the same age range as Sally for the purposes of defining sexual offenses.
 

 Second, while both Sally and Buffkin were alone at the time of the alleged sexual assaults, the circumstances were very different. Sally had requested to stay with defendant
 
 *274
 
 and was picked up and taken to defendant's mobile home with the consent of Sally's mother. Sally was then allegedly sexually assaulted by defendant while alone with defendant in the mobile home. Buffkin, on the other hand, shared an apartment
 
 *748
 
 with her boyfriend. At the time Buffkin was allegedly sexually assaulted, Buffkin's boyfriend was at work, and Buffkin was alone in the apartment when defendant purportedly gained access into the apartment by trickery and force and then raped her.
 

 Third, the relationships between defendant and the victims were dissimilar. Sally testified that defendant was the grandfather to her cousins and was like a grandfather to her. In contrast, Buffkin knew defendant from when she lived with Buffkin's sister, but there was no evidence of a close relationship.
 

 Lastly, the trial court indicated that force was a common element in both alleged instances of sexual assault. The evidence in both instances was that defendant forced the victims to a bed at some point in each assault. However, Buffkin testified that defendant held a razor knife to her throat throughout the incident. While Sally did testify that defendant had his hands around her throat at one point, there is no evidence that a weapon was used in the present case.
 

 Comparing the alleged prior sexual assault to the alleged sexual assault for which defendant is now on trial, we hold the above differences are significant and undermine the findings of similarity by the trial court. As a result of the lack of similarity, or the lack of adequate findings by the trial court to support a finding of similarity and proper purpose, we must further hold the trial court erred by admitting Buffkin's testimony under Rule 404(b) in the instant case. It appears Buffkin's testimony was relevant only to show defendant's character or propensity to commit a sexual assault. Additionally, because the trial court erred in finding Buffkin's testimony relevant for a valid purpose under Rule 404(b), the trial court could not have conducted a proper 403 analysis. Because there was a lack of physical evidence of defendant's guilt and the State's case was based largely on credibility, we cannot conclude the admission of Buffkin's testimony was harmless. Thus, defendant is entitled to a new trial.
 

 Although this holding disposes of this case on appeal, we briefly address the remaining two issues because there is a chance they will recur.
 

 B.
 
 Rule 404(b) Instruction
 

 Adding to the prejudicial nature of Buffkin's testimony is the fact that the trial court did not instruct the jury to consider the evidence for only those purposes under Rule 404(b) for which the trial court determined the evidence was relevant. In the second issue raised by defendant on appeal, defendant contends the trial court's refusal to issue such an instruction was error.
 

 *749
 
 N.C. Gen.Stat. § 8C-1, Rule 105 provides that " [w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." N.C. Gen.Stat. § 8C-1, Rule 105 (2015). Specifically in regards to Rule 404(b) evidence, this Court has stated that "[i]f ... the trial court concludes that the 'other crimes, wrongs, or acts' evidence is admissible, the court must, upon request, instruct the jury that the evidence is to be considered only for the purposes for which it was admitted."
 
 State v. Haskins,
 

 104 N.C.App. 675
 
 , 680,
 
 411 S.E.2d 376
 
 , 381 (1991) ((citing N.C. Gen.Stat. § 8C-1, Rule 105 )).
 

 The State does not dispute that the issuance of a limiting instruction would have been proper upon a request by defendant. Instead the State acknowledges "the almost routine nature of [ Rule] 404(b) evidence and its accompanying limiting instruction" and asserts that "it seems inconceivable the trial judge would have denied such a request." Thus, the State contends the trial court likely misunderstood defendant's request for an instruction and it was defendant's error not to reiterate or repeat his request. The State then identifies various times defendant could have requested an instruction and argues that "[g]iven the failure ... of [d]efendant to truly bring his request to the attention of the trial court, not withstanding [sic] countless
 
 *275
 
 opportunities to do so ..., [defendant] should be deemed to have waived this argument."
 

 As noted above, following Buffkin's testimony, defendant "move[d] to strike the testimony of the last witness and ask[ed] for an instruction and in the alternative ask[ed] for a mistrial." The trial court denied those requests.
 

 Because defendant is entitled to a new trial based on the admission of Buffkin's testimony under Rule 404(b), we need not decide whether defendant's request "for an instruction" was clear from the context in which it was made. Instead, we caution defense counsel not to take the admittedly "almost routine nature of Rule 404(b) evidence and its accompanying limiting instruction" for granted and we emphasize that defense counsel should clearly state all requests in order to avoid conjecture and the potential waiver of the issue on appeal.
 
 See
 
 N.C. R.App. P. 10(a)(1) (2016) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context.").
 

 *750
 
 C.
 
 Vouching for the Victim
 

 In defendants' last issue on appeal, defendant contends the trial court erred in allowing expert witness Diane Guida to vouch for Sally's credibility when she opined that Sally's "disclosure support[ed] the physical findings."
 

 Defendant did not object to the challenged testimony at trial. Consequently, this Court's review is limited to plain error, which defendant asserts.
 
 See
 
 N.C. R.App. P. 10(a)(4) (2016) ("In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.").
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and alterations omitted).
 

 "Our case law has long held that a witness may not vouch for the credibility of a victim."
 
 State v. Giddens,
 

 199 N.C.App. 115
 
 , 121,
 
 681 S.E.2d 504
 
 , 508 (2009),
 
 aff'd.,
 

 363 N.C. 826
 
 ,
 
 689 S.E.2d 858
 
 -59 (2010). Thus, "testimony of an expert to the effect that a prosecuting witness is believable, credible, or telling the truth is inadmissible evidence."
 
 State v. Bailey,
 

 89 N.C.App. 212
 
 , 219,
 
 365 S.E.2d 651
 
 , 655 (1988).
 

 Upon review of Guida's testimony in this case, it is clear that Guida did not vouch for Sally's credibility. Moreover, even if the wording of a single response by Guida pushed the bounds of impropriety, it did not amount to plain error.
 

 As noted above, the challenged testimony in this case was that of Guida, a retired family nurse practitioner and former registered child medical examiner who worked at the Carousel Center, a child advocacy center in Wilmington. Guida was tendered by the State as an expert in child sexual abuse and the trial court accepted her as an expert.
 

 *751
 
 Guida testified that she interviewed and examined Sally at the Carousel Center on 28 June 2011. Concerning the results of the physical examination, Guida testified "[she] found that [Sally] had diffusely bruised and swollen area at the base of her hymen and she also had a deep notch...." While reproducing a diagram from her report on a blackboard in the courtroom, Guida further explained her findings and opined that the bruising and swelling were "consistent with blunt force trauma." Guida later reiterated her opinion that Sally's injuries were the
 
 *276
 
 result of blunt force trauma and testified during the defenses' cross-examination that her findings were consistent with blunt force trauma. Guida, however, agreed that blunt force trauma could come from a number of sources. On redirect, the State then asked Guida, "In your medical exam is what [Sally] told you consistent with the physical trauma that you found?" Guida responded, "In my opinion, yes, ma'am, [Sally's] disclosure supports the physical findings."
 

 Although defendant concedes Guida's testimony that the findings from Sally's physical examination "[were] consistent with blunt force trauma" was permissible, defendant contends Guida's testimony that "[Sally's] disclosure supports the physical findings" improperly vouched for Sally's credibility in violation of Rules 405(a) and 608(a) and amounts to plain error. We disagree.
 

 As described in detail above, Guida testified on various occasions that her findings were consistent with blunt force trauma. Guida, however, refused to make a more specific characterization of Sally's injuries and acknowledged that the blunt force trauma could have come from a number of sources. When Guida's statement that "[Sally's] disclosure supports the physical findings[ ]" is viewed in the context of the entirety of her testimony and in response to the question she was asked, it is clear Guida was not commenting on the believability or credibility of Sally's disclosure. Guida's statement is more accurately construed as an opinion that Sally's disclosure was not inconsistent with the physical findings or impossible given the physical findings. This testimony was not error and certainly does not amount to plain error.
 

 III.
 
 Conclusion
 

 Because the trial court erred in admitting evidence of a prior sexual assault by defendant pursuant to Rule 404(b), defendant is entitled to a new trial.
 

 NEW TRIAL.
 

 Judge DIETZ concurs.
 

 Judge TYSON concurs in part and dissents in part in a separate opinion.
 

 TYSON, Judge, concurring in part, dissenting in part.
 

 *752
 
 I concur with the majority's holding that the trial court did not err by allowing Guida's testimony about her interview with and examination of Sally. I respectfully dissent from the majority's conclusion to find prejudicial error to warrant and award a new trial in the admission of Mattie Buffkin's testimony.
 

 Buffkin's testimony was properly admitted under the North Carolina Rules of Evidence, Rule 404(b).
 
 State v. Coffey,
 

 326 N.C. 268
 
 , 278-79,
 
 389 S.E.2d 48
 
 , 54 (1990) (holding Rule 404(b) is a rule of inclusion). Defendant has failed to show or argue unfair prejudice under Rule 403.
 
 State v. Lanier,
 

 165 N.C.App. 337
 
 , 345,
 
 598 S.E.2d 596
 
 , 602 (2004) (citation and internal quotation marks omitted) ("In each case, the burden is on the defendant to show that there was no proper purpose for which the evidence could be admitted."). I find no error in the trial court's admission of Buffkin's testimony under Rule 404(b) to show opportunity, motive, and intent. I respectfully dissent from the majority's award of a new trial.
 

 I. Standard of Review
 

 Our Supreme Court held:
 

 [W]hen analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling ... we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.
 

 State v. Beckelheimer,
 

 366 N.C. 127
 
 , 130,
 
 726 S.E.2d 156
 
 , 159 (2012).
 

 "A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision."
 
 State v. Hayes,
 

 314 N.C. 460
 
 , 471,
 
 334 S.E.2d 741
 
 , 747 (1985) (citation omitted).
 

 *277
 

 *753
 

 II. Analysis
 

 A. Rule 404(b)
 

 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen.Stat. § 8C-1, Rule 404(b) (2015). However, evidence of a defendant's prior crimes, statements, actions, and conduct is admissible, if relevant to any fact or issue other than the defendant's propensity for criminal conduct.
 
 Beckelheimer,
 

 366 N.C. at 130-31
 
 ,
 
 726 S.E.2d at 159
 
 .
 

 Rule 404(b) provides that evidence of prior similar acts is properly admissible so long as it is used to prove something other than the defendant's propensity or disposition to engage in like conduct. The one exception to that general rule of admissibility applies when the
 
 only
 
 probative value of the evidence is to show the defendant's propensity or disposition to commit offenses of the type charged.
 

 State v. Stager,
 

 329 N.C. 278
 
 , 310,
 
 406 S.E.2d 876
 
 , 894 (1991) (emphasis in original) (citation omitted).
 

 Rule 404(b) is a rule of inclusion, not exclusion.
 
 Coffey,
 

 326 N.C. at 278-79
 
 ,
 
 389 S.E.2d at 54
 
 .
 

 The rule lists numerous purposes for which evidence of prior acts may be admitted, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. This list is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue [at trial]....
 

 Beckelheimer,
 

 366 N.C. at 130
 
 ,
 
 726 S.E.2d at 159
 
 (internal citations and quotation marks omitted).
 

 The majority's opinion holds the trial court erroneously admitted Buffkin's testimony because of "significant differences" between the sexual assaults against Buffkin and Sally. The majority's opinion avers the two victims "were not that close in age[,]" and notes the different circumstances surrounding each victim being alone at the time of the sexual assault, and the different relationship between defendant and each victim. These slight variances do not rise to a level of sufficient dissimilarity so as to render Buffkin's testimony inadmissible under Rule 404(b) and to award a new trial to defendant.
 

 *754
 
 "Prior acts are sufficiently similar if there are some unusual facts present in both crimes that would indicate that the same person committed them. We do not require that the similarities rise to the level of the unique and bizarre."
 
 Beckelheimer,
 

 366 N.C. at 131
 
 ,
 
 726 S.E.2d at 159
 
 (citations and internal quotation marks omitted). In
 
 Beckelheimer,
 
 our Supreme Court noted:
 

 The trial court found that the age range of the 404(b) witness was close to the age range of the alleged victim, a finding supported by the evidence [.] ... The trial court found similarities in the location of the occurrence, a finding also supported by the evidence[.] ... Finally, the trial court found similarities in how the occurrences were brought about, a finding supported by the evidence[.] ... We conclude that these similarities are sufficient to support the State's theory of modus operandi in this case.
 

 Id.
 

 (internal quotation marks omitted).
 

 In reversing this Court's decision, the
 
 Beckelheimer
 
 Court observed:
 

 Instead of reviewing these similarities noted by the trial court, the Court of Appeals focused on the differences between the incidents and determined they were significant....
 

 ... The Court of Appeals' analysis seems to require circumstances to be all but identical for evidence to be admissible under Rule 404(b). Our case law is clear that near identical circumstances are not required; rather, the incidents need only share "some unusual facts" that go to a purpose other than propensity for the evidence to be admissible.
 

 Id.
 
 at 131-32,
 
 726 S.E.2d at 159-160
 
 (citations omitted).
 

 Here, the trial court denied defendant's motion
 
 in limine
 
 and ruled Buffkin's testimony was admissible under Rule 404(b). The trial court determined this evidence was admissible for the purpose of showing opportunity and plan. The trial court based its ruling on the following findings:
 

 *278
 
 [I]n both instances the defendant found a minor child alone, sexually assaulted the minor child and that in both instances the defendant, Mr. Watts, told the minor child after the assaults, that he would kill the minor child and the minor child's family.
 

 *755
 
 In both instances, it shows that the defendant had a plan to separate the minor child in each case from the child's family or boyfriend and the defendant used force for the sexual assault and ... was an acquaintance of both.
 

 The majority's opinion asserts the trial court's "broad labeling of the similarities disguises significant differences in the sexual assaults." I disagree. The majority's analysis suffers from the same error for which our Supreme Court criticized and reversed this Court in
 
 Beckelheimer,
 

 366 N.C. at 131-32
 
 ,
 
 726 S.E.2d at 159-60
 
 (citations omitted). The trial court's factual findings regarding the substantial similarities between the two sexual assaults are more than sufficient to determine Buffkin's testimony supported a permissible purpose for admission under Rule 404(b), and to admit this testimony into evidence.
 

 In both cases, defendant was acquainted with the victims, and presented himself to them as a paternal figure. Sally testified defendant was "like a grandfather" to her. Buffkin testified when defendant knocked on her door the night of the sexual assault, she asked who it was and defendant replied, "It's your daddy." In both cases, defendant sought and created opportunities to allow him to take advantage of the victim's trust in order to get her alone with him before committing the sexual assault.
 

 The majority's opinion notes the difference in the victims' ages, as it pertains to chargeable sexual offenses under our General Statutes. I do not find this distinction to be meaningful. Both victims were minors under the age of eighteen.
 

 Defendant also used force in both sexual assaults, specifically targeting the victim's neck. Both victims repeatedly told defendant to stop, resisted, and tried to escape from him. Defendant also threatened to kill both victims and members of their family if they told anyone about the sexual assault. The two sexual assaults were sufficiently similar to admit Buffkin's testimony into evidence under Rule 404(b) to show defendant's
 
 modus operandi.
 

 Defendant also argues the prior alleged incident was too far removed in time from the incident at bar to be admissible under Rule 404(b). Our Supreme Court has held "remoteness in time is less significant when the prior conduct is used to show intent, motive, knowledge, or lack of accident; remoteness in time generally affects only the weight to be given such evidence, not its admissibility."
 
 Stager,
 

 329 N.C. at 307
 
 ,
 
 406 S.E.2d at 893
 
 (citation omitted).
 
 See also
 

 State v. Riddick,
 

 316 N.C. 127
 
 , 134,
 
 340 S.E.2d 422
 
 , 427 (1986) ("It is reasonable to think that a criminal who has
 
 *756
 
 adopted a particular
 
 modus operandi
 
 will continue to use it notwithstanding a long lapse of time between crimes."). The lapse of approximately seven-and-one-half years between the two sexual assaults does not make Buffkin's testimony inadmissible. It was for the jury to determine what weight, if any, her testimony is to be given.
 

 B. Rule 403-Unfair Prejudice
 

 The trial court's admission of Buffkin's testimony also did not violate Rule 403. "Evidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree."
 
 Coffey,
 

 326 N.C. at 281
 
 ,
 
 389 S.E.2d at 56
 
 (citation omitted). The trial court determined the probative value of this evidence was not substantially outweighed by any prejudicial effect the admission of this evidence would have on defendant. Defendant failed to set out any arguments in his brief regarding the trial court's Rule 403 determination. It is well-settled that arguments not presented in an appellant's brief are deemed abandoned on appeal. N.C.R.App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").
 

 The trial court admitted into evidence Buffkin's testimony for a permissible purpose under Rule 404(b). Defendant does not challenge this evidence under Rule 403 and has
 
 *279
 
 failed to establish the admission of this evidence was prejudicial error.
 

 III. Conclusion
 

 Defendant received a fair trial free from prejudicial errors he preserved and argued. Under the standard of review for the error argued, I vote to find no error in the jury's verdict and the judgment entered thereon. I respectfully dissent.
 

 [1]
 

 A pseudonym used by both parties to protect the identity of the juvenile.
 

 [2]
 

 Effective 1 December 2015, Chapter 14 of the General Statutes was amended and the sexual offense statutes were reorganized, renamed, and renumbered in Article 7B of Chapter 14 in order to make them more easily distinguishable from one another as recommended in
 
 State v. Hicks,
 
 ---N.C.App. ----,
 
 768 S.E.2d 373
 
 ,
 
 disc. rev. denied,
 
 --- N.C. ----,
 
 772 S.E.2d 731
 
 (2015).
 
 See
 
 N.C. Sess. Laws 2015-181, eff. Dec. 1, 2015. Because defendant was indicted under the prior version of the statutes, for sake of clarity, all references and cites to sexual offense statutes in this opinion refer to the version of the statutes in effect prior to 1 December 2015.