IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-527

No. COA20-515

Filed 2 August 2022

Wake County, No. 17 CRS 214685

STATE OF NORTH CAROLINA

v.

TROY LOGAN PICKENS

Appeal by Defendant from judgments entered 1 November 2019 by Judge Carl R. Fox in Wake County Superior Court. Heard in the Court of Appeals 19 October 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sherri Horner Lawrence, for the State-Appellee.*

*Michael E. Casterline for Defendant-Appellant.*

COLLINS, Judge.

Defendant Troy Logan Pickens appeals from judgments entered upon jury verdicts of guilty of one count of first-degree rape of a child and two counts of first-degree sexual offense with a child. Defendant argues that the trial court erred by admitting certain Rule 404(b) evidence and erred in sentencing. We find no error in the admission of the challenged evidence. We conclude that the trial court improperly considered Defendant's exercise of his constitutional right to demand a

trial by jury in deciding to impose consecutive sentences. Defendant's convictions remain undisturbed, and the matter is remanded to the trial court for resentencing.

## I. Procedural History and Factual Background

¶ 2 Defendant was indicted on one count of first-degree rape of a child and two counts of first-degree sexual offense with a child. The State filed a pretrial notice of Rule 404(b) evidence, giving notice to Defendant "of the State's intent to introduce at the trial of the above cases evidence of other crimes, wrongs, or acts as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake, entrapment or accident." Defendant filed a motion in limine "to preclude the State from introducing any evidence that the Defendant committed sexual assault in Durham, North Carolina."

¶ 3 The trial began on 21 October 2019. At trial, relevant evidence tended to show that on 1 July 2015, Defendant was hired as the chorus teacher at Durant Middle School in Raleigh. At the end of July, eleven-year-old Ellen[1] began sixth grade at that school. Ellen was around 4'10" tall, weighed between 60-65 pounds, and "had not yet reached puberty[.]"

### A. Ellen's Testimony

¶ 4 While Ellen attended Durant Middle School, she would leave during class

---

[1] We use pseudonyms to protect the identity of both juvenile witnesses in this case. *See* N.C. R. App. P. 42(b).

around lunchtime each day, walk through the school to get a dose of her prescribed Ritalin from the school nurse, and return to class. One day, a month or two after she had started the school year, she saw Defendant while she was walking in the sixth-grade hallway to get her medication. She knew who Defendant was because some of her friends had chorus with him, but she did not have him as a teacher. He motioned her over. She asked him, "What do you need?" Defendant replied, "Be quiet." He grabbed the back of her shirt and walked her into an empty restroom. He took her into the handicapped stall at the end of the restroom and told her to take her clothes off. He then unbuttoned his pants and told her to touch his penis. When she did not do so, he grabbed her hand and put it on his penis. He then told her to stroke it and moved her hand. He threatened to hurt her or her family if she told. After five minutes or less, she left the restroom and went back to class.

¶ 5       The next time Ellen encountered Defendant in the hallway, he grabbed her again by her shirt and her ponytail, and the same series of events occurred in the same bathroom stall: he forced her to undress and stroke his penis, and he threatened her if she told. Then he told her to bend over the toilet. She felt pressure as he tried twice to put his penis in her vagina before telling her she was too small. He then put his penis in her anus.

¶ 6       The next time Ellen encountered Defendant in the hallway, he took her into the handicapped stall, told her to undress and stroke his penis, and then told her to

defecate in the toilet. After she did, he told her to pick her feces out of the toilet. Saying, "Open up you filthy slut," he put her feces in her mouth. Feces were also smeared on the wall of the stall. He told her to bend over and had anal intercourse. He also touched her chest and her vagina.

¶ 7 This sequence of events happened every other day for a couple of weeks. Ellen described him cussing under his breath and muttering "whore" and "slut." She also described occasions when Defendant had forced her to perform fellatio. She once tried to stop him and he threw her, slamming her leg against the toilet. When each episode was over, Ellen would wash her hands, rinse out her mouth, and go back to class.

**B. Kathleen's 404(b) Testimony**

¶ 8 The State called Kathleen as a Rule 404(b) witness. After voir dire of Kathleen, the trial court orally denied Defendant's motion to exclude Kathleen's testimony.

¶ 9 Kathleen testified before the jury, essentially as she had in voir dire, as follows: Defendant had been her chorus teacher at Neal Middle School in Durham when Kathleen was in the seventh grade. One day, she and her classmates had been watching a movie in Defendant's class. When it was time to leave and everyone was getting up to go, Defendant came over to her, put his hands on her waist, and moved them down towards her bottom. It made her uncomfortable, and she ran out of the classroom.

¶ 10 In the eighth grade, she again took chorus from Defendant. He wanted her to

participate in an extracurricular performance which required practice at a different school. She did not want to be involved because none of her friends were participating, but Defendant called her mother, and her mother told him Kathleen would participate. Kathleen's mother had a medical condition, so Defendant volunteered to give Kathleen rides to the practice.

¶ 11        On 2 February 2015, the day after Kathleen turned 14, she was riding to the final practice with Defendant. He told her he needed to stop at his apartment, and he told her to come inside with him. They sat on his couch and watched a cartoon while they ate. After putting the dishes in the sink, he came back and touched her leg. Kathleen asked him not to touch her. He continued touching her leg, then pulled her up by her left arm and pulled her into his bedroom as she resisted. Kathleen – who was then 5' 2" tall and weighed 100 pounds – testified that he threw her down on the bed. As she lay on her back, Defendant took off her pants and underwear, pulled his own pants half-way down, then put his penis into her vagina. She asked him to stop and was crying, but he did not stop. After a few minutes, he moved away from Kathleen and went into the bathroom.

¶ 12        Kathleen put her clothes on. When Defendant came back into the room, he apologized to her and told her that if she told anyone, it would happen again. He then took her to practice and later gave her a ride home.

¶ 13        At the conclusion of the trial for sexually assaulting Ellen, Defendant was

found guilty on all charges.

## II. Analysis

### A. Rule 404(b) Evidence

Defendant argues that the trial court erred in admitting Kathleen's testimony under Rule 404(b) because it was not similar to the crime charged and was unduly prejudicial.

The trial court's determination as to whether the evidence of other crimes, wrongs, or acts falls within the scope of Rule 404(b) is a question of law, which we review de novo on appeal. *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).

Under North Carolina Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2019). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* "Generally, Rule 404 acts as a gatekeeper against 'character evidence,'" *State v. Pabon*, 380 N.C. 241, 2022-NCSC-16, ¶ 60 (quoting N.C. Gen. Stat. § 8C-1, Rule 404(a)), and evidence admitted under Rule 404(b) "should be carefully scrutinized in order to adequately safeguard against the improper introduction of character evidence against the accused," *State v.*

*Al-Bayyinah*, 356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002) (citation omitted).

¶ 17        Notwithstanding this important protective role, our North Carolina Supreme Court has repeatedly held that "Rule 404(b) state[s] a clear general rule of inclusion." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990); *see Al-Bayyinah*, 356 N.C. at 153-54, 567 S.E.2d at 122 (quoting *Coffey* for this same proposition). Accordingly, relevant evidence of a defendant's past crimes, wrongs, or acts is generally admissible for any one or more of the purposes enumerated in Rule 404(b)'s non-exhaustive list, "subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Coffey*, 326 N.C. at 278-79, 389 S.E.2d at 54 (emphasis in original); *see Beckelheimer*, 366 N.C. at 130, 726 S.E.2d at 159 (noting that Rule 404(b)'s list "is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime" (quotation marks and citation omitted)).

¶ 18        "[T]he rule of inclusion described in *Coffey* is constrained by the requirements of similarity and temporal proximity." *Al-Bayyinah*, 356 N.C. at 154, 567 S.E.2d at 123 (citations omitted). Prior acts are sufficiently similar under Rule 404(b) "if there are some unusual facts present in both crimes that would indicate that the same person committed them." *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 (quotation marks and citation omitted). "While these similarities must be specific enough to

distinguish the acts from any generalized commission of the crime, 'we do not require that they rise to the level of the unique and bizarre.'" *Pabon*, 380 N.C. 241, 2022-NCSC-16, ¶ 63 (quoting *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 156) (brackets omitted).

Regarding temporal proximity, "a greater lapse in time between the prior and present acts generally indicate[s] a weaker case for admissibility under Rule 404(b)," *id.*, but "remoteness for purposes of 404(b) must be considered in light of the specific facts of each case[,] . . . [and t]he purpose underlying the evidence also affects the analysis." *Id.* (quotation marks, citations, brackets, and ellipsis omitted). "Evidence of a prior bad act generally is admissible under Rule 404(b) if it constitutes substantial evidence tending to support a reasonable finding by the jury that the defendant committed the similar act." *Al-Bayyinah*, 356 N.C. at 155, 567 S.E.2d at 123 (quotation marks, emphasis, and citations omitted).

"With respect to prior sexual offenses, we have been very liberal in permitting the State to present such evidence to prove any relevant fact not prohibited by Rule 404(b)." *State v. White*, 331 N.C. 604, 612, 419 S.E.2d 557, 561 (1992). As our Supreme Court noted,

> our decisions, both before and after the adoption of Rule 404(b), have been "markedly liberal" in holding evidence of prior sex offenses "admissible for one or more of the purposes listed [in Rule 404(b)] . . . ."

*Coffey*, 326 N.C. at 279, 389 S.E.2d at 54 (quoting 1 Henry Brandis, Jr., Brandis on North Carolina Evidence § 92 (3d ed. 1988)).

¶ 21        In this case, the assaults of Ellen took place in or around August or September of 2015 and the alleged assault of Kathleen took place in February of 2015. Defendant does not contest that this six-to-seven month time frame does not meet the temporal proximity requirement under Rule 404(b). Therefore, the sole issue before this Court is whether the 404(b) evidence was sufficiently similar to the acts at issue.

¶ 22        Here, the sexual assaults described by Ellen and the alleged sexual assault described by Kathleen contained key similarities. Most significantly, in both cases, Defendant used his position as a middle school teacher to gain access to, exercise authority over, and ultimately assault diminutive, middle-school-aged girls. In both cases, Defendant first encountered the girl during school hours inside the middle school where he worked as a choral teacher. Ellen and Kathleen were both middle school students and were similar in age when they were assaulted: Ellen was 11 years old, and Kathleen had just turned 14 years old. The girls were similar in build when they were assaulted: Ellen was around 4'10" tall and weighed approximately 60-65 pounds while Kathleen was 5'2" tall and weighed 100 pounds. In each case, Defendant grabbed the girl and pulled her to the isolated area where he assaulted her. Defendant also ignored each girl's tears. Also, in each case, Defendant pulled his pants and underwear half-way down. Defendant similarly sexually assaulted

each girl: Defendant attempted to put his penis in Ellen's vagina but, when he was not able to, he put his penis in her anus. Defendant put his penis in Kathleen's vagina. Each assault lasted a brief period of time. In each case, Defendant used threats after the sexual assault to discourage reporting. Based on all these points of commonality, we conclude that Kathleen's testimony was sufficiently similar to the offenses charged to be relevant and admissible for the proper purpose of showing Defendant's intent, motive, plan, and design. *See State v. Houseright*, 220 N.C. App. 495, 500, 725 S.E.2d 445, 449 (2012) (404(b) witness's testimony as to her sexual encounter with defendant "was admissible for the purpose of showing defendant's plan or intent to engage in sexual activity with young girls" where the 404(b) witness testified that defendant engaged in sexual conduct with her when she was 13 or 14 years old; the indictments alleged that defendant engaged in sexual activity with the victim over a period of years when she was 13 to 15 years old; and defendant's conduct with the 404(b) witness took place within the same time period as the offenses alleged in the indictments); *State v. Smith*, 152 N.C. App. 514, 527, 568 S.E.2d 289, 297-98 (2002) (404(b) witness's testimony was "relevant to show absence of mistake and a common plan or scheme, specifically that defendant took advantage of young girls in situations where he had parental or adult responsibility for them. . . . [and] was also admitted to show defendant's unnatural attraction to young girls" where defendant was charged with sexual misconduct with a 12-year-old which consisted of rubbing

her breast and digitally penetrating her vagina, and the 404(b) witness testified that when she was 15 years old, defendant had sexual intercourse with her and performed oral sex on her without her consent).

¶ 23        To be sure, there are differences between the acts and their attendant circumstances.  However, "[o]ur case law is clear that near identical circumstances are not required[;] rather, the incidents need only share 'some unusual facts' that go to a purpose other than propensity for the evidence to be admissible." *Beckelheimer*, 366 N.C. at 132, 726 S.E.2d at 160 (citations omitted).

¶ 24        In his brief, Defendant analogizes this case to *State v. Watts*, 246 N.C. App. 737, 783 S.E.2d 266 (2016), *modified in part and aff'd by* 370 N.C. 39, 802 S.E.2d 905 (2017), where a divided panel of this Court awarded a new trial, holding that the trial court erred by admitting certain 404(b) evidence.  However, contrary to Defendant's assertion, our North Carolina Supreme Court did not affirm *Watts* based on the Court of Appeals' majority's analysis and conclusion.  Instead, the Supreme Court modified the Court of Appeals' majority opinion and affirmed the decision to award a new trial based on the trial court's failure to deliver a limiting instruction concerning the admitted 404(b) evidence.  370 N.C. at 41, 802 S.E.2d at 907.

¶ 25        In *Watts*, the Court of Appeals' majority held that evidence of a prior sexual assault was inadmissible in the sexual assault case before it under Rule 404(b) where "both instances involved the sexual assault of minors, the minors were alone at the

time of the assaults, [the] defendant was an acquaintance of the minors, [the] defendant used force, and [the] defendant threatened to kill each minor and the minors' families." 246 N.C. App. at 747, 783 S.E.2d at 273. The majority found "these similarities [were not] unusual to the crimes charged" and held "the [] differences are significant and undermine the findings of similarity by the trial court." *Id.* at 747-48, 783 S.E.2d at 273-74.

¶ 26        Upon the State's appeal to the Supreme Court, the Supreme Court, on its own motion, ordered the parties to "submit supplemental briefs addressing the issues of whether the trial court erred by failing to deliver a limiting instruction concerning the testimony delivered by [the 404(b) witness] pursuant to N.C.G.S. § 8C-1, Rule 404(b) and, if so, whether any error that the trial court may have committed constituted prejudicial error or plain error, depending upon the position taken by the party." *State v. Watts*, No. 132A16, 2017 N.C. LEXIS 1028 (2017) (unpublished). In its opinion modifying and affirming the lower appellate court, the Supreme Court held:

> Our General Statutes provide that "when evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, *shall* restrict the evidence to its proper scope and instruct the jury accordingly." N.C.G.S. § 8C-1, Rule 105 (2015) (emphasis added). "Failure to give the requested instruction must be held prejudicial error for which [a] defendant is entitled to a new trial." *State v. Norkett*, 269 N.C. 679, 681, 153 S.E.2d 362, 363 (1967); *cf. State v.*

> *Stager*, 329 N.C. 278, 406 S.E.2d 876 (1991) (failure to give a limiting instruction not requested by a defendant is not reviewable on appeal); *State v. Jones*, 322 N.C. 406, 368 S.E.2d 844 (1988) (same). Accordingly, because defendant was prejudiced by the trial court's failure to give the requested limiting instruction, we affirm, as modified herein, the opinion of the Court of Appeals that reversed defendant's convictions and remanded the matter to the trial court for a new trial.

370 N.C. at 41, 802 S.E.2d at 907. Consequently, the Supreme Court impliedly, if not explicitly, held that the challenged 404(b) evidence was admissible.

In the present case, the unusual facts present in both the sexual assaults described by Ellen and the alleged sexual assault described by Kathleen are even more marked than the unusual facts present in *Watts*. Accordingly, the Rule 404(b) evidence was sufficiently similar and not too remote in time and the trial court did not err by admitting it.

**B. Rule 403**

As the trial court did not err under Rule 404(b) by admitting the challenged evidence, we must review the trial court's Rule 403 determination for abuse of discretion. *State v. Whaley*, 362 N.C. 156, 160, 655 S.E.2d 388, 390 (2008).

Pursuant to Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-

1, Rule 403 (2019). It is well settled "[w]hile all evidence offered against a party involves some prejudicial effect, the fact that evidence is prejudicial does not mean that it is necessarily unfairly prejudicial." *State v. Rainey*, 198 N.C. App. 427, 433, 680 S.E.2d 760, 766 (2009) (citations omitted). Rather, "[t]he meaning of 'unfair prejudice' in the context of Rule 403 is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *Id.* (quotation marks and citation omitted). Furthermore, "[t]he party who asserts that evidence was improperly admitted usually has the burden to show the error and that he was prejudiced by its admission." *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893 (2001) (quotation marks and citation omitted). Thus, Defendant must carry the burden of proving the evidence was unfairly prejudicial.

¶ 30 Here "a review of the record reveals that the trial court was aware of the potential danger of unfair prejudice to defendant and was careful to give a proper limiting instruction to the jury." *State v. Hipps*, 348 N.C. 377, 406, 501 S.E.2d 625, 642 (1998). The trial court first heard Kathleen's testimony outside the presence of the jury, then heard arguments from the attorneys and ruled on its admissibility, stating that "the probative value of the evidence outweighs any undue prejudice that is caused by the admission of these acts[.]" Moreover, the trial court gave the appropriate limiting instruction. Given the similarities between Ellen's and Kathleen's accounts, and the trial court's careful handling of the process, we conclude

that it was not an abuse of discretion for the trial court to determine that the danger

of unfair prejudice did not substantially outweigh the probative value of the evidence.

*Whaley*, 362 N.C. at 160, 655 S.E.2d at 390. The trial court thus properly admitted

the 404(b) evidence here.

## C. Sentencing

Defendant next argues that the trial court considered impermissible factors

before imposing consecutive sentences.

> A sentence within statutory limits is "presumed to be
> regular." *State v. Boone*, 293 N.C. 702, 712, 239 S.E.2d 459,
> 465 (1977). Where the record, however, reveals the trial
> court considered an improper matter in determining the
> severity of the sentence, the presumption of regularity is
> overcome. *Id.* It is improper for the trial court, in
> sentencing a defendant, to consider the defendant's
> decision to insist on a jury trial. *State v. Cannon*, 326 N.C.
> 37, 39, 387 S.E.2d 450, 451 (1990). Where it can be
> reasonably inferred the sentence imposed on a defendant
> was based, even in part, on the defendant's insistence on a
> jury trial, the defendant is entitled to a new sentencing
> hearing. *Id.*

*State v. Peterson*, 154 N.C. App. 515, 517, 571 S.E.2d 883, 885 (2002).

At the sentencing hearing, the trial court addressed those in the court room,

and specifically Defendant, in part, as follows:

> It would be difficult for an adult to come in here and testify
> in front of God and the country about what those two girls
> came in here and testified about. It would be
> embarrassing. It would be embarrassing to testify about
> consensual sex in front of a jury or a bunch of strangers.

> *And in truth, they get traumatized again by being here, but it's absolutely necessary when a defendant pleads not guilty. They didn't have a choice and you, Mr. Pickens, had a choice.*

(Emphasis added). Immediately after this statement, the trial court sentenced Defendant to three consecutive active prison terms of 300 to 420 months.

¶ 33 We conclude that it is apparent from the trial court's remarks that the trial court improperly considered Defendant's exercise of his constitutional right to demand a trial by jury. As the trial court's decision to impose three consecutive sentences was, at least partially, based on Defendant's decision to plead not guilty, this case must be remanded for re-sentencing. *State v. Hueto*, 195 N.C. App. 67, 78, 671 S.E.2d 62, 69 (2009) (citing *Boone*, 293 N.C. at 711-13, 239 S.E.2d at 465 (1977)).

¶ 34 In reaching this result, we are cognizant that a trial court may, in its discretion, impose consecutive sentences. *See* N.C. Gen. Stat. § 15A-1340.15(a) (2019) ("This Article does not prohibit the imposition of consecutive sentences."). Indeed, "[t]he trial judge may have sentenced defendant quite fairly in the case at bar[.]" *Boone*, 293 N.C. at 712, 239 S.E.2d at 465 (quotation marks omitted). Nonetheless, we also conclude there is a clear inference that a greater sentence was imposed because Defendant did not plead guilty. *See id.* We vacate Defendant's sentence and remand to the trial court for resentencing.

### III.   Conclusion

¶ 35    We find no error in the admission of the challenged Rule 404(b) evidence. We conclude that the trial court improperly considered Defendant's exercise of his constitutional right to demand a trial by jury in deciding to impose three consecutive sentences. We vacate Defendant's sentence and remand to the trial court for resentencing.

NO ERROR IN PART; VACATED AND REMANDED FOR RESENTENCING.

Judge ZACHARY concurs.

Judge MURPHY dissents by separate opinion.

MURPHY, Judge, dissenting.

While I do not disagree with the Majority's analysis of the Rule 403 or resentencing issues in ¶¶28-34, those issues would be rendered moot by my resolution of the Rule 404(b) issue. I would hold that the trial court erred in admitting evidence of a prior sexual assault under Rule 404(b) and that Defendant was prejudiced to the degree required for him to be entitled to a new trial, and I would not reach the remaining issues. Therefore, I respectfully dissent.

Rule 404(b) allows a jury to consider evidence of prior bad acts when the evidence is admitted for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake, entrapment, or accident. However, before applying Rule 404(b), the prior bad act must be shown to be sufficiently similar and in sufficient temporal proximity to the offense charged. Here, the trial court erred by admitting evidence of Defendant's alleged prior sexual assault of a minor where it was not sufficiently similar to the sexual assault for which Defendant was on trial.

## BACKGROUND

Defendant Troy Logan Pickens was indicted for first-degree rape of a child and two counts of sexual offense with a child by an adult based on allegations of the victim, Cindy.[2] At the time of the alleged offenses, Defendant was a chorus teacher

---

[2] Pseudonyms are used for all relevant persons throughout this opinion to protect the identities of the juveniles and for ease of reading.

at Cindy's middle school.

¶ 39        Prior to trial, on 4 October 2019, the State filed a notice of intent to offer Rule

404(b) evidence, prompting Defendant to file a motion in limine in response on 11

October 2019.  Correctly assuming the State was referring to a prior allegation that

Defendant sexually assaulted Wilma, a former student in Defendant's chorus class,

in 2015, Defendant argued that the differences between the crimes were so significant

as to make the Rule 404(b) evidence inadmissible.  Defendant further argued that,

even if the evidence had probative value, the probative value would be far outweighed

by the danger of unfair prejudice, confusing the issues, and misleading the jury,

necessitating exclusion under Rule 403.

¶ 40        On 21 October 2019, the trial court denied Defendant's motion to exclude the

State's proffered Rule 404(b) evidence.  The trial court did not issue an order with

explicit findings of fact or conclusions of law; instead, the trial court orally ruled on

Defendant's motion in limine regarding the Rule 404(b) evidence, stating:

> Well, I don't know that the -- I think the temporal
> proximity in this case exists.  I think that this -- the fact
> that he was a teacher on both of these occasions, even
> though he wasn't a teacher of one of the -- well, the victim
> in this case, that it was the fact that he was a teacher that
> gave him access to the victim in each case, the fact that he
> or it's alleged that on each case he grabbed the girls by one
> arm and pulled them where he wanted to go, that he -- that
> both these girls, by their description, seem to be girls who
> were relatively small in stature and, therefore, to some
> extent, physically helpless and that they are sufficiently

similar so as to be admissible and that they -- the probative value of the evidence outweighs any undue prejudice that is caused by the admission of these acts, and they certainly are relevant, and they do tend to indicate evidence of intent, motive, plan, and design, and that, therefore, this Court finds that they are admissible in the trial of this case, and, therefore, the motion to prohibit that admissibility of this evidence is denied, and the exception is noted for the record.

**A. Assaults of Cindy**

According to the testimony at trial, in July 2015, Cindy began middle school at eleven years old. While in school, Cindy took daily prescription medication around lunch time that the staff members at Cindy's middle school were authorized to administer. She typically took her medication around 12:10 p.m. Defendant had a planning period from 12:15 p.m. to 1:00 p.m.

According to Cindy's testimony, about one to two months into the school year, she saw Defendant in the hallway when she was out of her class to take her medication. Defendant motioned for Cindy to approach him, told her "[b]e quiet," grabbed the back of her shirt, and took her to a handicapped stall inside the sixth-grade girls' restroom. Defendant told Cindy to take off her clothes, he unbuttoned his pants, and told her to stroke his penis. At some point, Defendant stopped and Cindy left the bathroom to go back to class. Defendant threatened to hurt Cindy or her family if she told anyone about the incident. As a whole, this encounter occurred over the course of five minutes or less.

¶ 43        Cindy also testified about another assault with Defendant that occurred after she saw him again in the hallway.  Defendant again grabbed Cindy by the back of her shirt—and, this time, also by her ponytail—and took her to the handicapped stall of the bathroom.  He told her to get undressed again, pulled his pants down partially, made her stroke his penis, told Cindy to bend over and tried to put his penis in Cindy's vagina twice.  Defendant stated something along the lines of "you're too small" and "I thought this would be a problem," then put his penis in Cindy's anus.  This encounter occurred over the span of about five minutes.

¶ 44        Cindy testified that on another day, Defendant stopped Cindy in the hallway on the way to get her medication and again took her to the bathroom.  This time, Defendant instructed Cindy to defecate in the toilet, pick up the feces, and then Defendant put the feces in Cindy's mouth while saying "you filthy slut."  He again threatened to hurt her family if she did not comply.  Either Defendant or Cindy smeared feces on the wall in the process, and Defendant again put his penis in Cindy's anus.  Defendant also touched Cindy's chest and vagina with his hand.  This occurred over five to seven minutes.

¶ 45        According to Cindy's testimony, she would see Defendant in the hallway every other day.[3]  She testified that Defendant continued to sexually assault Cindy,

---

[3] Based on the testimony, it is unclear if the sexual assaults occurred every other day.

including one occasion when Cindy tried to resist and Defendant threw her into the wall or toilet and another occasion where Defendant hit her across the face. Defendant allegedly sexually assaulted Cindy repeatedly over the course of a couple weeks, with multiple instances of Defendant calling Cindy a "whore" or "slut," Defendant making Cindy put his penis in her mouth, Defendant putting his penis in Cindy's anus, and Defendant making Cindy eat her feces. At the time of these incidents, Cindy was shorter than five feet tall, and was "pretty small."[4]

Almost two years later, in April 2017, Cindy first reported these incidents to a third party when she text messaged her mother something along the lines of "Mom, [Defendant] hurt me, touched me in ways that he shouldn't have." Cindy told her mother at this time because one of her friends had stated that Defendant had been arrested for hurting another girl and she had confirmed Defendant's arrest on Google.

### B. Assault of Wilma

Additionally, at Defendant's trial for sexually assaulting Cindy, Wilma, a former student of Defendant, testified that Defendant sexually assaulted her in 2015, when she was fourteen years old. Her testimony regarding the sexual assault was

---

[4] To help gauge the meaning of "pretty small," later testimony reflects that, in the aftermath of the sexual assault, when Cindy was twelve years old, she developed severe food aversions and was eventually admitted to a hospital for treatment related to Avoidant Restrictive Food Intake Disorder. At the time of her admission, she weighed about fifty-nine pounds and was four feet ten inches tall.

admitted as Rule 404(b) evidence over Defendant's objections, and a limiting instruction was given prior to the testimony describing the sexual assault.[5] According to Wilma's testimony, starting in seventh grade, at another middle school, Wilma had been in chorus class with Defendant as her teacher. Defendant took particular interest in Wilma and three of her friends as they were good singers. Near the end of seventh grade, after watching a movie in the classroom and while students were getting up and leaving the classroom, Defendant placed his hands on Wilma's waist and moved them down towards her buttocks. In response, Wilma ran out of the room.

Wilma took chorus with Defendant in eighth grade as well. That year, Defendant asked Wilma to join a singing and dancing performance held at a local

---

[5] The limiting instruction stated:

> When evidence has been received tending to show that at an earlier time, [] [D]efendant may have done or participated in other crimes, wrongs, or acts, this evidence may not be considered by you as proof of the character of [] [D]efendant in order to show that he acted in conformity therewith.

> If you believe [] [D]efendant committed or participated in these other crimes, wrongs, or acts, you may consider them for one purpose only, and that is whether they constitute proof of one or more of the following things: Motive, opportunity, intent, plan, scheme, or system as to the charges against him in this case. You may not consider them for any other purpose and you may not convict [] [D]efendant of the crimes charged because of any evidence he participated in or committed any other crimes, wrongs, or acts at an earlier time.

high school. Wilma indicated she was not interested, but Defendant called Wilma's mother. Her mother, believing that Wilma was interested in participating, told Defendant that Wilma would participate. The practices for the performance took place at the high school, and Defendant arranged with Wilma's mother to drive Wilma from the middle school to the high school. No other students joined Defendant and Wilma on their drives to the high school.

¶ 49    Wilma testified that, in 2015, while Defendant was driving her to the last practice at the high school, he stopped by his apartment because he said he wanted to change clothes. Initially, Wilma indicated she would stay in the car, but Defendant encouraged her to come up to the apartment. Once in the apartment, Defendant made himself and Wilma a sandwich, and Wilma watched television on the couch. After they finished eating, Defendant began to touch Wilma's thigh, to which Wilma responded by moving his hand and asking him not to do so. Defendant continued to touch her thigh, then pulled Wilma by her arm into his bedroom, where he threw Wilma onto the bed, removed her pants and underwear, pulled his pants down, and put his penis in her vagina. When asked how long this lasted, Wilma testified "it wasn't long." After Defendant stopped, he went to the bathroom and, upon returning to the bedroom, apologized to Wilma and "said that if [she were] to tell anyone, it

would happen again."[6]

## C. Sentencing

¶ 50      Following the conclusion of the trial for sexually assaulting Cindy, Defendant

was found guilty on all charges.

¶ 51      At the sentencing hearing, the trial court stated:

> To say the facts of this case are egregious is putting it
> mildly.  The facts of this case are among the worst I've ever
> seen, and I've seen a lot of cases, thousands as a prosecutor,
> thousands as a judge.  One of the things that one has to
> understand -- I was thinking about this earlier -- is that
> children the age of 11, unless they are really in an usual
> environment, have no idea about sex acts.  They just don't.
> I mean, I'm sure – I've seen girls who were pregnant at that
> age, but they shouldn't have been, but were raped.  They
> weren't consensual acts.
>
> The Legislature did something several years ago when they
> enacted this structured sentencing that I totally agreed
> with and I advocated for for ten years before they did it,
> and that was to make -- send a clear message that there
> was a difference between a violent crime and crimes
> against -- and nonviolent crimes, crimes against property,
> because the effect is totally different.  I mean, just seeing
> these children testify in this case was just evidence to
> anyone who opened their eyes who had listened to it as to
> how damaged these children were by their experience.  I
> don't -- given the number of women out here in the world,
> I don't understand why some people choose underage girls,
> but it's wrong.  It's morally wrong.  It's legally wrong, and
> there's no justification for it.

---

[6] At the time, Wilma was fourteen years old, weighed one hundred pounds, and was five feet two inches tall.

> It would be difficult for an adult to come in here and testify in front of God and the country about what those two girls came in here and testified about. It would be embarrassing. It would be embarrassing to testify about consensual sex in front of a jury or a bunch of strangers. And in truth, they get traumatized again by being here, but it's absolutely necessary when a defendant pleads not guilty. They didn't have a choice and you, Mr. Pickens, had a choice.
>
> All right. If you'll stand up, Mr. Pickens. I assume this was a B1 felony in 2015. In this case, [] [D]efendant, Troy Logan Pickens, having been convicted by a jury -- found guilty by a jury in count one, guilty of first-degree rape of a child, the Court makes no findings in aggravation or mitigation because the prison time -- prison sentence is required by law under 14-27.23.

Immediately after these statements, the trial court sentenced Defendant to three consecutive active sentences of 300 to 420 months. Defendant timely appealed.

## ANALYSIS

On appeal, Defendant argues "[t]he trial court erred in admitting testimony under Rule 404(b) which was not similar to the crime charged and was unfairly prejudicial." He also argues he "is entitled to a new sentencing hearing because the trial court considered impermissible factors before imposing consecutive sentences." The trial court committed prejudicial error in admitting the challenged testimony under Rule 404(b). As a result, I do not address the sentencing issue, and would vacate the judgement and remand for a new trial.

### A. Rule 404(b) Evidence

¶ 53      Defendant contends the trial court erred by admitting Rule 404(b) evidence regarding his prior sexual assault as the events were not sufficiently similar and the probative value of the evidence was outweighed by the prejudice to Defendant under Rule 403. I would resolve this challenge on the basis of Rule 404(b) and, as a result, do not reach the Rule 403 issue.

¶ 54      Our Supreme Court has held:

> Though this Court has not used the term de novo to describe its own review of 404(b) evidence, we have consistently engaged in a fact-based inquiry under Rule 404(b) while applying an abuse of discretion standard to the subsequent balancing of probative value and unfair prejudice under Rule 403. For the purpose of clarity, we now explicitly hold that when analyzing rulings applying Rules 404(b) and 403, we conduct distinct inquiries with different standards of review. When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, . . . we look to whether the evidence supports the findings and whether the findings support the conclusions. We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 158-59 (2012) (citation omitted).

¶ 55      Rule 404(b) establishes that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

> opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (2021). Rule 404(b)

> state[s] a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged. Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also is relevant for some purpose *other than* to show that [the] defendant has the propensity for the type of conduct for which he is being tried.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (marks and citation omitted). "Though it is a rule of inclusion, Rule 404(b) is still constrained by the requirements of similarity and temporal proximity." *Beckelheimer*, 366 N.C. at 131, 726 S.E.2d at 159 (marks and citation omitted). Additionally, "North Carolina courts have been consistently liberal in admitting evidence of similar sex offenses in trials on sexual crime charges." *State v. Jacob*, 113 N.C. App. 605, 608, 439 S.E.2d 812, 813 (1994).

¶ 56 As Defendant has only challenged the Rule 404(b) evidence on the basis of similarity, I address only similarity and not temporal proximity. *See* N.C. R. App. P. 28(a) (2022) ("Issues not presented and discussed in a party's brief are deemed abandoned."). Additionally, I address only "the purposes identified by the trial court

below in admitting the testimony into the evidence at trial"—in this case, intent,

motive, plan, and design.[7]  *State v. Watts,* 246 N.C. App. 737, 745, 783 S.E.2d 266,

272 (2016), *aff'd as modified per curium,* 370 N.C. 39, 802 S.E.2d 905 (2017) (refusing

to address purposes that the trial court did not identify for the admissibility of Rule

404(b) evidence).

## 1. Similarity

¶ 57     Our Supreme Court has held:

> Under Rule 404(b) a prior act or crime is "similar" if there
> are some unusual facts present in both crimes or
> particularly similar acts which would indicate that the
> same person committed both.  However, it is not necessary
> that the similarities between the two situations rise to the
> level of the unique and bizarre.  Rather, the similarities
> simply must tend to support a reasonable inference that
> the same person committed both the earlier and later acts.

*State v. Stager,* 329 N.C. 278, 304, 406 S.E.2d 876, 890-91 (1991) (marks and citations

omitted).  Our Supreme Court has also previously found a prior act not to be

sufficiently similar where the only similarities between the prior act and the crime

charged were common to most occurrences of that type of crime.  *See State v. Al-*

*Bayyinah,* 356 N.C. 150, 155, 567 S.E.2d 120, 123 (2002) ("The [S]tate failed to show,

---

[7] I note that, although the trial court denied the motion in limine and allowed the Rule 404(b) evidence for the purposes of intent, motive, plan, and design, the trial court's limiting instruction mentioned the purposes of motive, opportunity, intent, plan, scheme, or system. I rely on the purposes articulated in the trial court's ruling on the motion in limine.

however, that sufficient similarities existed between the [prior] robberies and the present robbery and murder beyond those characteristics inherent to most armed robberies, i.e., use of a weapon, a demand for money, immediate flight."); *see also Watts,* 246 N.C. App. at 747, 783 S.E.2d at 273 ("Like our Supreme Court in *Al–Bayyinah*, we do not find these similarities[—that both instances involved the sexual assault of minors, the minors were alone at the time of the assaults, [the] defendant was an acquaintance of the minors, [the] defendant used force, and [the] defendant threatened to kill each minor and the minors' families—]unusual to the crimes charged. Moreover, we think the trial court's broad labelling of the similarities disguises significant differences in the sexual assaults.").

¶ 58        In *Watts*, we addressed the similarity between two alleged sexual assaults of minors by an adult defendant. *Watts,* 246 N.C. App. at 747-48, 783 S.E.2d at 273-74. The trial court had allowed Rule 404(b) evidence of a prior sexual assault where "both instances involved the sexual assault of minors, the minors were alone at the time of the assaults, [the] defendant was an acquaintance of the minors, [the] defendant used force, and [the] defendant threatened to kill each minor and the minors' families." *Id.* at 747, 783 S.E.2d at 273. However, we found "these similarities [were not] unusual to the crimes charged" and held "the [] differences are significant and undermine the findings of similarity by the trial court." *Id.* at 747-48, 783 S.E.2d at 273-74. The relevant differences included a six-year difference in the age of the minors; the

circumstances of the sexual assaults differing significantly, with one occurring where

the minor requested to stay with the defendant and was taken to his home with

consent of the minor's mother and the other occurring by forcible entry into the

minor's apartment; the relationships differing significantly, where one minor viewed

the defendant like a grandfather and the other minor knew the defendant but did not

have a close relationship with him; and the method differing significantly, with the

defendant using a razor knife in one sexual assault and strangulation without the

use of a weapon in the other. *Id.* We went on to grant the defendant a new trial as

the lack of similarity between the events rendered the trial court's admission of the

Rule 404(b) evidence erroneous. *Id.*

¶ 59    I find *Watts* to be controlling on the facts *sub judice.* Here, regarding

similarity, the trial court stated:

> I think that this -- the fact that he was a teacher on both of
> these occasions, even though he wasn't a teacher of one of
> the -- well, the victim in this case, that it was the fact that
> he was a teacher that gave him access to the victim in each
> case, the fact that he or it's alleged that on each case he
> grabbed the girls by one arm and pulled them where he
> wanted to go, that he -- that both these girls, by their
> description, seem to be girls who were relatively small in
> stature and, therefore, to some extent, physically helpless
> and that they are sufficiently similar so as to be admissible
> . . . .

¶ 60    Although I find the differences between the alleged sexual assaults to be more

significant for the Rule 404(b) purposes under which the evidence was admitted, the

trial court correctly identified some general similarities between these events.[8]  First,

Defendant had access to and authority over Cindy and Wilma by virtue of Defendant's

career as a teacher.  Second, Cindy and Wilma were middle school aged girls.[9]  Third,

Defendant did not fully remove his pants during the sexual assaults.  Fourth, the

sexual assaults occurred over a short period of time.  Fifth, in both instances, at least

some of the acts occurred at a middle school.  Sixth, Wilma and Cindy were both of

relatively small stature.[10]  Although these similarities could contribute to a

conclusion of unusual similarity in another case when considered in conjunction with

other supporting similarities, I do not believe that these facts reflect an unusual

---

[8] Similarities common to most instances of the offense that were present here include the use of threats after the sexual assaults to discourage reporting, that Defendant was in control during each sexual assault, that Defendant attempted to put his penis in Cindy's vagina and Defendant put his penis in Wilma's vagina, that Defendant removed Cindy and Wilma's pants and underwear, and that Defendant used force to take Cindy and Wilma to a more private location where the sexual assault took place.  As a result of these aspects being common to sexual assaults in general, I do not find that they rendered this offense and the prior act sufficiently similar.  *See Al-Bayyinah*, 356 N.C. at 155, 567 S.E.2d at 123.

I also note that, if there were something unusual to any of these aspects, such as the *content* of a threat or the *manner* that Cindy and Wilma's clothes were removed, those similarities could contribute to there being an unusual similarity.  However, here, there were no unusual similarities of this kind between the sexual assaults.

[9] Cindy was eleven and Wilma was fourteen.  This difference in age is arguably sufficient to constitute a difference rather than a similarity.  Indeed, it is not uncommon for an eleven-year-old child to be characterized as elementary school aged rather than middle school aged.

[10] There is not clear evidence on what Cindy's approximate height and weight were at the time of the sexual assault.  If we were to use Cindy's height and weight about eight months after the alleged sexual assault, there would have been a four-inch height difference and potentially as much as a forty-pound weight difference between Cindy and Wilma at the times of the sexual assaults.  This also could more properly constitute a difference.

similarity such that they evidence a similar intent, motive, plan, or design under these circumstances.

¶ 61      Instead, under *Watts*, I believe these features are insufficient to establish unusual similarity. In *Watts*, the similarities referred to by the trial court concerned general characteristics of the crimes that, although meaningful, were held insufficient to establish an unusual similarity between the events, especially where "the trial court's broad labelling of the similarities disguise[d] significant differences in the sexual assaults." *Watts,* 246 N.C. App. at 747, 783 S.E.2d at 273. Here, considering the general nature of the similarities identified by the trial court, along with the significant differences between the sexual assaults, the trial court erred in finding there was an unusual similarity justifying the admittance of the Rule 404(b) evidence to show a similar intent, motive, plan, or design.

¶ 62      The specifics of the alleged assaults were remarkably distinct. First, the way Defendant knew Wilma and Cindy differed—Defendant knew Wilma by virtue of being her chorus teacher for seventh and eighth grade, whereas Defendant did not know Cindy prior to sexually assaulting her.

¶ 63      Second, the manner in which the sexual assaults were brought about differed. Defendant manufactured the opportunity to isolate Wilma and sexually assault her by inviting her to participate in a performance, then following up with her mother knowing she did not intend to participate and offering to drive her. Defendant's

opportunity to sexually assault Cindy was incidental, with Cindy already walking to get her medication daily around noon.

¶ 64    Third, the progression of the actions differed significantly. Defendant's attempted grooming behavior began by getting to know Wilma through the chorus class and showing a preference for her, then inappropriately touching her waist, then creating an opportunity for him to spend time alone with her, and then sexually assaulting her. With Cindy, Defendant immediately sexually assaulted her by making her undress and touch his penis, then progressed to more extreme actions. Defendant's interactions with Cindy *began* with sexual assault, whereas those with Wilma *escalated* to sexual assault.

¶ 65    Fourth, the locations of the actions committed differed significantly. Although Defendant touched Wilma's waist at school, Defendant sexually assaulted her at his home in a bed. With Cindy, the sexual assaults occurred exclusively in a school bathroom. It is important that Defendant did not sexually assault Wilma at the school, as there is a significant methodological difference between a single sexual assault in a private place and repeated sexual assaults in a public restroom.

¶ 66    Fifth, the actions alleged widely differed. With Wilma, Defendant groped her legs and forcibly put his penis in her vagina. With Cindy, Defendant made her touch his penis, touched her breasts and vagina, attempted to put his penis in her vagina, forced her to put his penis in her mouth, made her defecate and eat her feces, and put

his penis in her anus.

¶ 67     Finally, the frequency of the actions significantly differed.  With Wilma, there were two instances of inappropriate conduct and one instance of sexual assault.  With Cindy, the sexual assaults recurred over the course of a couple weeks, occurring at least five times and potentially occurring as often as every other day during this time period.[11]

¶ 68     The differences between Defendant's sexual assaults on Wilma and Cindy significantly undermine a finding that the events were sufficiently similar to show Defendant's intent, motive, plan, and design.  Indeed, the plan or design for these events significantly differed in that Defendant's sexual assault on Wilma resulted from gradually escalating attempted grooming behavior towards a student in his class, ending in a single incidence of sexual assault outside of the school, whereas his sexual assault on Cindy resulted from a sudden attack on a student unknown to Defendant that recurred at the school over the course of two weeks with increasing depravity.  Furthermore, the extreme differences between the specific acts that Defendant committed during the sexual assaults demonstrates there was not a similar intent, motive, plan, or design.  The only similarity in Defendant's intent or motive would be in the general purpose to sexually assault a middle school aged girl,

_____

[11] Cindy testified to the specific details of at least five separate instances of sexual assault.

which does not alone rise to the level of an unusual similarity.

¶ 69        "Comparing the alleged prior sexual assault to the alleged sexual assault for which [the] defendant is now on trial, [I would] hold the above differences are significant and undermine the findings of similarity by the trial court." *Watts,* 246 N.C. App. at 748, 783 S.E.2d at 274.  The prior bad act was not sufficiently similar to the Defendant's alleged actions for which he was on trial.  As a result, the trial court erred by admitting Wilma's testimony under Rule 404(b) as it was not sufficiently similar and was only relevant to show "[D]efendant's character or propensity to commit a sexual assault [on a minor]." *Watts,* 246 N.C. App. at 748, 783 S.E.2d at 274.

**2. Prejudice**

¶ 70        I must also consider whether this error was prejudicial.  A preserved error is prejudicial "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (2021).  I conclude there is a reasonable possibility that the jury would have reached a different verdict if this evidence had not been admitted.  There were no witnesses to Defendant's sexual assaults of Cindy, and there was no physical evidence of Defendant's guilt.  As a result, the credibility of Cindy's testimony was essential to the jury's guilty verdict.  Furthermore, there was evidence that might undermine Cindy's testimony, such as her assertion that she

was using crutches due to an injury caused by Defendant when she met with the principal of her school, which was undermined by her mother's denial of Cindy having used crutches that day; accusations that the principal of the middle school yelled at her, called her vulgar names, and broke her wrist, which were undermined by the counselor who was present for the whole meeting; expert evidence that Cindy "scored extremely high on confusion between reality and imagining things"; and Cindy's parents' suspicions of a prior sexual trauma.

¶ 71        In light of the facts of this case, the erroneous admission of Defendant's alleged sexual assault on Wilma created a reasonable possibility that the jury would have reached a different verdict if this evidence had not been admitted. The erroneous admission of the Rule 404(b) evidence was prejudicial to Defendant. Defendant is entitled to a new trial, and I would not reach Defendant's other arguments on appeal. *See Watts,* 246 N.C. App. at 748, 783 S.E.2d at 274 (granting a new trial where we held Rule 404(b) evidence was improperly admitted and was prejudicial, and noting that our holding disposed of the case on appeal).

## CONCLUSION

¶ 72        The trial court committed prejudicial error by admitting evidence of a prior sexual assault under Rule 404(b), entitling Defendant to a new trial.